# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **Richard L. Jackson; and Jackson for Governor, Inc.,** | |
| **Plaintiffs,** | |
| **v.** | Case No.  _____ |
| **William Burton Jones, in his personal capacity, and in his official capacity as the Lieutenant Governor of Georgia; Christopher M. Carr, in his official capacity as the Attorney General of Georgia; James D. Kreyenbuhl, in his official capacity as Chairman of the Georgia State Ethics Commission; Rick Thompson, in his official capacity as Vice Chair of the Georgia State Ethics Commission; Joseph Cusack, in his official capacity as a Member of the Georgia State Ethics Commission; Stan Wise, in his official capacity as a Member of the Georgia State Ethics Commission; Dana Diment, in her official capacity as a Member of the State Ethics Commission; WBJ Leadership Committee, Inc.; and Burt Jones for Georgia, Inc.,** | **VERIFIED COMPLAINT** <br><br> **DECLARATORY AND INJUNCTIVE RELIEF SOUGHT** |
| **Defendants.** | |

## INTRODUCTION

1.      Plaintiffs Richard L. Jackson and Jackson for Governor, Inc. (collectively, "Jackson"), by counsel, respectfully seek declaratory and injunctive relief on an expedited basis, in order to protect Jackson's constitutional rights from an uneven and discriminatory campaign finance statute that grants special free-speech privileges to the sitting lieutenant governor running in the 2026 Republican gubernatorial primary election while denying those privileges to Jackson, another candidate in that election. In at least two previous cases, this Court granted similar relief on near-identical facts in challenges to the same Georgia law.

2.      The U.S. Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis v. FEC*, 554 U.S. 724, 738 (2008). Georgia ignored this fundamental and bright-line standard by enacting 2021 Senate Bill 221, codified into law as O.C.G.A. § 21-5-34.2, which, here, allows the incumbent lieutenant governor—and no other 2026 Republican gubernatorial primary candidate—to chair, and to utilize for his gubernatorial campaign's benefit, a "leadership committee" to which Georgia's campaign contribution limits do not apply.

3.      Indeed, numerous rulings of this Court confirm the unconstitutionality of this statute as applied in these circumstances. In 2022, this Court enjoined the use

of a leadership committee in a gubernatorial primary election when one candidate had access to a leadership committee and the other did not. *Perdue v. Kemp*, 584 F. Supp. 3d 1310, 1323 (N.D. Ga. 2022). Later that same year, this Court enjoined a leadership committee from raising funds until after its chair became the nominee of a political party for governor, when another candidate for the same office was not an incumbent and lacked access to a leadership committee. *One Georgia, Inc. v. Carr*, 601 F. Supp. 3d 1291, 1309 (N.D. Ga. 2022).

4.    More recently, in *Carr v. WBJ Leadership Committee*, No. 25-CV-04426, ECF No. 22 at 14 (N.D. Ga. Aug. 28, 2025), a suit against the lieutenant governor and his political committees but not pertinent state officers, this Court again recognized an injury where the plaintiff was a participant in the same election but subject to different contribution limits than his incumbent opponent, as a function of the statute. However, this Court concluded the plaintiff's injury was not traceable to the defendants, who were "benefiting from a law enacted to confer such a benefit[.]" *Id*. at 15. As a result, the case was dismissed for lack of standing. *Id*. at 20.

5.    Similarly, in *Safe Affordable Georgia Inc. v. Kreyenbuhl*, No. 1:25-CV-06985-ELR (N.D. Ga. Jan. 27, 2026), this Court denied injunctive relief to a hybrid PAC, which sought to remedy this constitutional violation by obtaining an order

authorizing the PAC, like a leadership committee, to raise and spend unlimited money. This Court held there was no authority for such relief.

6.    In sum, the prior cases that have considered O.C.G.A. § 21-5-34.2's disparate treatment of First Amendment rights of incumbent candidates and non-incumbent candidates on its merits have found it unconstitutional; no case has held it passes muster. The cases, however, have different outcomes based on the defendants sued and the relief requested. Standing requires official defendants; here, Jackson has sued them, and appropriate relief includes enjoining the competitor's leadership committee (also a defendant party here) from raising and spending unlimited money to benefit its chairing candidate unless and until its candidate wins a political party nomination.

7.    A motion for a preliminary injunction will be filed with the Court imminently.

### OVERVIEW OF THE CHALLENGED PROVISION

8.    The U.S. Supreme Court has made clear that "the unprecedented step of imposing different contribution . . . limits on candidates vying for the same seat is antithetical to the First Amendment." *Davis*, 554 U.S. at 743–44.

9.    Georgia 2021 Senate Bill 221, codified at O.C.G.A. § 21-5-34.2 (hereinafter the "Challenged Provision"), did exactly that by amending the Georgia

Government Transparency and Campaign Finance Act, O.C.G.A. §§ 21-5-1, *et seq.* (the "Act"), to create a new type of campaign finance entity, available only to certain individuals (incumbents), that is not subject to the Act's campaign contribution or coordination limits.

10.    The Act generally provides that a candidate and the candidate's campaign committee may accept contributions in limited amounts. Currently, statewide candidates and their campaign committees may accept aggregate contributions from any person that do not exceed $8,400 for the primary election and $4,800 for the primary runoff election. *Id.* § 21-5-41(a).[1]

11.    The Challenged Provision authorizes certain incumbent candidates— including the incumbent lieutenant governor—to create an additional "leadership committee" which is *exempt* from the Act's contribution limits and may raise *unlimited* contributions.

12.    Leadership committees are also permitted to make expenditures without limit "for the purpose of affecting the outcome of *any* election or advocating for the election or defeat of *any* candidate," and to "defray ordinary and necessary expenses incurred in connection with *any* candidate's campaign for elective office."

---

[1] As required by law (*see* note 9, *infra*), the limits have been adjusted from time to time to account for inflation, so the dollar amounts written into the Act do not reflect the current limits.

*Id.* § 21-5-34.2(d) (emphasis added). A leadership committee's expenditures in support of the candidacy of the leadership committee's chairperson are not subject to the limits otherwise imposed on in-kind contributions.

13.     As a result, the Challenged Provision creates a de facto second, super-duper campaign committee for Lieutenant Governor Jones that disadvantages Jackson. Prior to the primary election, only the incumbent lieutenant governor is permitted to create a leadership committee.[2] The incumbent lieutenant governor thus may amass a political war chest of unlimited contributions for the governor's race. He can then use those unlimited funds to support his own candidacy, and to attack his challengers in the primary election, who have one hand—both, really—statutorily tied behind their backs.

14.     On June 9, 2022, WBJ Leadership Committee, Inc. registered with the Georgia State Ethics Commission, f/k/a the Georgia Government Transparency and Campaign Finance Commission (the "Commission") as a leadership committee with Lieutenant Governor Jones as its chairperson. Since that time, WBJ Leadership

---

[2] The Challenged Provision would also permit the incumbent governor to do so, but Defendant Kemp is term-limited and is not a candidate for reelection. O.C.G.A. § 21-5-34.2; Ga. Const. Art. V, § 1. Therefore, Defendant Jones is the sole candidate eligible to form a leadership committee in connection with the upcoming gubernatorial election.

Committee, Inc. has been permitted to raise, and has raised, unlimited contributions from donors.[3]

15.    Jackson recently declared his candidacy for the Republican gubernatorial primary on February 3, 2026. Upon information and belief, Lieutenant Governor Jones promptly began taking full advantage of the Challenged Provisions' disparate treatment of candidates by tapping the funds in his leadership committee to begin placing significant media buys.

16.    Unlike Lieutenant Governor Jones, Jackson remains bound by the campaign contribution limits in the Act and must respond within the confines of Georgia's traditional campaign finance regime.

17.    This court has previously dismissed the notion that the Challenged Provision can be justified by any assertion it increases Georgia's disclosure reporting requirements. *Perdue v. Kemp*, 584 F. Supp. 3d at 1325.[4]

---

[3] WBJ Leadership Committee, Inc. reported a $14,299,337.43 ending monetary balance to the Commission as of WBJ Leadership Committee's June 30, 2025 Campaign Contribution Disclosure Report, including multiple contributions for $100,000. *See https://peachfile.ethics.ga.gov/public/cf/candidateprofile.*

[4] "In sum, the Court finds that the State's claimed important governmental interest for the enactment of O.C.G.A. § 21-5-34.2, "transparency," standing alone, is not a sufficient legal justification for the "unprecedented step of imposing different contribution ... limits on candidates vying for the same seat[.]" *Davis*, 554 U.S. at 743. Additionally, there is no indication from the plain language of O.C.G.A. § 21-

18.    To the contrary, the Challenged Provision simply applied the existing disclosure requirements to the new type of committee. The fact that leadership committees are required to disclose their financial activity does not affect the basic constitutional infirmity inherent in the Challenged Provision, which is that only one candidate in this gubernatorial race—the incumbent lieutenant governor—can raise and use leadership committee funds prior to the party primaries. Regardless of public disclosure, this Court has clearly held that the Challenged Provision nakedly benefits certain incumbent state officeholders at the expense of any non-incumbent challenger, such as Jackson, by creating an opportunity for the incumbent to use unlimited contributions to benefit his candidacy and to flood the competitive market of electoral politics with his own message while other candidates lack the same legal permission.

19.    The Challenged Provision also cannot be justified on the grounds that it decreases the risk of quid pro quo corruption. The only legitimate and compelling government interests identified by the Supreme Court for restricting campaign finances are preventing quid pro quo corruption or its appearance. A law that

---

5-34.2, when considered with the previously enacted prohibition on contributions during the legislative session, that the state's interest in enacting O.C.G.A. § 21-5-34.2 is the prevention of corruption or the appearance of corruption, which is the only recognized state interest sufficiently legitimate to justify any intrusion upon political contributions." *Perdue v. Kemp*, 584 F. Supp. 3d at 1325.

functionally obviates contribution limits for only one, incumbent officeholder – and not private citizens like Jackson – cannot be justified on the grounds that it is an anti-corruption measure.[5]

20.     The Challenged Provision as applied infringes on Jackson's constitutional rights by creating an uneven election playing field and, as a result, burdening Jackson's First Amendment political speech rights and violating equal protection. Georgia has created a system that inhibits robust and wide-open political debate by unconstitutionally advantaging one candidate over his primary challenger in their respective abilities to fundraise and engage in core political speech. Repeatedly, this Court has held precisely that in granting injunctive relief to non-incumbent parties.

## **PARTIES**

21.     Plaintiff Richard L. Jackson is a candidate for Governor in 2026 and is seeking the Republican nomination. Mr. Jackson is a resident of the State of Georgia.

---

[5] "If the governmental interest served by the campaign contribution scheme established by O.C.G.A. § 21-5-41(a) is to prevent quid pro quo corruption, it does not make sense that completely removing a small number of candidates from that regulatory scheme somehow enhances that interest. To the contrary, rather than addressing quid pro quo corruption, O.C.G.A. § 21-5-34.2 removes the regulatory contribution limit safeguards that were previously established to combat quid pro quo corruption. If anything, permitting unlimited campaign contributions in abrogation of the longstanding regulatory scheme limiting such contributions risks *more corruption*." *Perdue v. Kemp*, 584 F. Supp. 3d at 1326 (emphasis added).

22.    Plaintiff Jackson for Governor, Inc. is a campaign committee as defined by the Act, *id.* § 21-5-3(2), and is headquartered in Alpharetta, Georgia. Jackson for Governor, Inc. is the campaign committee of Jackson in his campaign to become Governor of Georgia.

23.    Defendant Christopher M. Carr ("Attorney General Carr") is the Attorney General of Georgia. The Act provides the Attorney General may bring actions to enforce violations of the Act. *See* O.C.G.A. § 21-5-6(b)(14)(C).[6]

24.    Defendant James D. Kreyenbuhl is the Chairman of the Commission.[7]

25.    Defendant Rick Thompson is the Vice Chair of the Commission.[8]

---

[6] As a named defendant in his official capacity as the Attorney General of Georgia in *Perdue v. Kemp*, Attorney General Carr is well aware of the preliminary injunction in that case that enjoined Governor Kemp's leadership committee from soliciting or receiving contributions until after becoming the party nominee.

[7] As a named defendant in his official capacity as Chairman of the Commission in *Perdue v. Kemp*, Mr. Kreyenbuhl is well aware of the preliminary injunction in that case that enjoined Governor Kemp's leadership committee from soliciting or receiving contributions until after becoming the party nominee.

[8] As a named defendant in his official capacity as a Member of the Commission in *Perdue v. Kemp*, Mr. Thompson is well aware of the preliminary injunction in that case that enjoined Governor Kemp's leadership committee from soliciting or receiving contributions until after becoming the party nominee.

26. Defendants Joseph Cusack, Stan Wise, and Dana Diment are members of the Commission (collectively with Kreyenbuhl and Thompson, the "Commission Defendants").

27. In their roles as members of the Commission, the Commission Defendants are empowered and entrusted to enforce the Act. *See generally id.* §§ 21-5-6, 21-5-7, 21-5-36. The Commission Defendants accomplish this goal by, *inter alia*, "institut[ing] and prosecut[ing] actions in the superior courts" in the name of the Commission and "seeking to enjoin or restrain any violation or threatened violation of [the Act]." *Id.* § 21-5-6(a)(6).

28. Defendant William Burton Jones, a/k/a Burt Jones, is the current Lieutenant Governor of the State of Georgia. On July 8, 2025, Lieutenant Governor Jones announced his campaign for Governor.

29. Defendant Burt Jones for Georgia, Inc., is Lieutenant Governor Jones' campaign committee, as defined by Georgia law, O.C.G.A. § 21-5-3(2). It can be served with process through its registered agent, Macy McFall, at 500 14th Street NW, Atlanta, GA 30318, in Fulton County, Georgia.

30. Defendant WBJ Leadership Committee, Inc. is a leadership committee, as defined by Georgia law, O.C.G.A. § 21-5-34.2(a), and, to be an authorized leadership committee, must be chaired by Mr. Jones. It can be served with process

through its registered agent, also Macy McFall, at 500 14th Street NW, Atlanta, GA 30318, in Fulton County, Georgia.

31.    Lieutenant Governor Jones is a state official.

32.    Lieutenant Governor Jones has de facto and de jure control of WBJ Leadership Committee and its operations.

33.    WBJ Leadership Committee's functioning is entirely dependent upon and intertwined with Lieutenant Governor Jones. If Lieutenant Governor Jones ceases to hold the office of Lieutenant Governor, he cannot continue to chair WBJ Leadership Committee unless he holds some other position that makes him eligible under O.C.G.A. § 21-5-34.2.

34.    As a result, WBJ Leadership Committee is a state actor for purposes of 42 U.S.C. § 1983.

35.    Defendants, personally and through the conduct of their employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

36.    All Defendants are sued for declaratory and injunctive relief, as noted above.

**JURISDICTION AND VENUE**

37.     This Court has subject-matter jurisdiction because this action arises under the laws and Constitution of the United States. 28 U.S.C. § 1331. Specifically, this action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 to enforce and to enjoin violations of rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

38.     Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

39.     This Court has personal jurisdiction over Defendants, who reside in Georgia.

40.     Venue is proper in this District because all Defendants reside in Georgia and because a substantial part of the events giving rise to Jackson's claims occurred within this judicial District. *See* 28 U.S.C. §§ 1391(b)(1), (2).

41.     Venue is proper in this Division because at least one of the named Defendants resides in this Division. *See* N.D. Ga. Civ. L. R. 3.1(B)(1).

42.     Jackson has standing because Jackson has declared his candidacy in the 2026 Republican gubernatorial primary election, and the Challenged Provision's selective removal of campaign finance restrictions for the incumbent lieutenant

governor specifically disadvantages Jackson, who remains subject to statutory campaign contribution limitations during the primary election.

43.    As a result of the unequal contribution limits applied to gubernatorial primary candidates in the same race—which manifest in the incumbent lieutenant governor's ability to chair and control a leadership committee—Lieutenant Governor Jones is able to raise and expend substantially more funds than Jackson.

44.    Under Georgia's contribution limits on Jackson, but functionally not on Jones, Jackson must raise funds in amounts of no more than $8,400 for the primary and $4,800 for a potential primary runoff; Jackson must spend more time and resources raising money. This undermines Jackson's ability to spread his campaign message in the same manner as Lieutenant Governor Jones and puts Jackson at a significant competitive disadvantage.

45.    Jackson's injuries are caused by the unequal contribution limits created by the Challenged Provision. Lieutenant Governor Jones' expenditures from his leadership committee as allowed by the Challenged Provision promote his candidacy and benefit his campaign committee, thereby harming Jackson's candidacy.

46.    Jackson's injuries will be redressed if the Court grants the relief requested.

## FACTUAL ALLEGATIONS

47.    Due to the First Amendment implications of campaign finance regulations, such laws cannot be upheld unless they satisfy at least "exacting scrutiny." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021). That is, a regulation limiting campaign contributions or expenditures must be "justified by a compelling state interest," *Davis*, 554 U.S. at 740, and be "narrowly tailored" to that interest, *Randall v. Sorrell*, 548 U.S. 230, 261 (2006); *see FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 261 (1986). *See also Perdue v. Kemp*, 584 F. Supp. 3d at 1323 ("Therefore, whether this law passes constitutional muster depends on whether Defendants can demonstrate a sufficiently important state interest and, if so, whether the law is closely drawn to serve that interest.").

48.    In addition, Jackson is entitled to equal protection under the law, especially where, as here, uneven and discriminatory treatment burdens his First Amendment rights in the throes of a hotly contested political campaign. To justify such unequal treatment, a law must satisfy "greater scrutiny." *See Riddle v. Hickenlooper*, 742 F.3d 922, 927 (10th Cir. 2014).

49.    This Court, after a thorough review in *Perdue v Kemp*, held the Challenged Provision does not come close to satisfying any standard of review. Specifically, in *Perdue v. Kemp*, this Court stated that "[i]n sum the Court finds that

the State's claimed important governmental interest for the enactment of O.C.G.A. § 21-5-34.2 . . . is not a sufficient legal justification for the unprecedented step of imposing different contribution ... limits on candidates vying for the same seat. . . . The Court finds that, even if the State's interest in promoting transparency was a sufficiently important government interest to support the enactment of O.C.G.A. § 21-5-34.2, or if the interest actually was to prevent corruption, the statute is not closely drawn to serve those interests." *Perdue v. Kemp*, 584 F. Supp. 3d at 1325, 1327 (internal citations and punctuation omitted).

## I.    GEORGIA'S GOVERNMENT TRANSPARENCY AND CAMPAIGN FINANCE ACT

50.    Apart from the leadership committees created by the Challenged Provision, the Act applies equally to all gubernatorial candidates and their campaign committees.  Specifically, the Act prohibits any statewide "candidate or campaign committee" from receiving contributions "in the aggregate" from any person exceeding $8,400 for the primary election and $4,800 for the primary runoff election. O.C.G.A. 21-5-41(a).[9]

---

[9] The statutory contribution limits are indexed for inflation. *See* O.C.G.A. § 21-5-41(k). On March 27, 2023, the Commission unanimously voted to increase the campaign contribution limits to $8,400 for the primary election and $4,800 for the primary run-off election. *See* Summary of Commission Meeting at 2, Ga. Gov't Transparency & Campaign Fin. Comm'n, Mar. 27, 2023, https://ethics.ga.gov/commission-meeting-march-27-2023/.    The    Georgia

51.    The Act provides that campaign contributions "shall be utilized only to defray ordinary and necessary expenses" of the campaign, *id.* § 21-5-33(a), which include "expenditures made during the reporting period for qualifying fees, office costs and rent, lodging, equipment, travel, advertising, postage, staff salaries, consultants, files storage, polling, special events, volunteers, reimbursements to volunteers, repayment of any loans received . . . contributions to nonprofit organizations, flowers for special occasions . . . [and] attorney fees connected to and in the furtherance of the campaign." *Id.* § 21-5-3(18).

## II.    THE CHALLENGED PROVISION

52.    The Challenged Provision undermines the even-handed campaign committee contribution regime established by the Act. Specifically, the Challenged Provision authorizes "the Lieutenant Governor"[10] to establish a "leadership

---

Government Transparency & Campaign Finance Commission subsequently changed its official name to the "Georgia State Ethics Commission" effective as of July 1, 2023. O.C.G.A. § 21-5-4; 2023 Ga. HB 572.

[10] The Challenged Provision also allows the chairing of leadership committees by the incumbent Governor, the nominee of a political party for Governor and Lieutenant Governor selected in a primary election, the majority and minority caucuses of the Georgia House of Representatives, and the majority and minority caucuses of the Georgia Senate. O.C.G.A. § 21-5-34.2(a). Jackson is not challenging the statute with respect to leadership committees chaired by nominees of political parties or the majority and minority caucuses of the Georgia House of Representatives and Senate.

committee" which "may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate[, and] may defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office . . . ." *Id.* §§ 21-5-34.2(a), (d).

53.    The Challenged Provision further provides that "the contribution limits [established in the Act] ***shall not apply to contributions to a leadership committee*** or ***expenditures made by a leadership committee in support of a candidate*** . . . ." *Id.* § 21-5-34.2(e) (emphasis added).

54.    A leadership committee not only may *accept* unlimited *contributions*, but it also may *make* unlimited *expenditures* benefitting the incumbent chairperson's candidacy, without such spending counting as an in-kind contribution to the incumbent candidate or his campaign committee. *See id.* §§ 21-5-34.2(d), (f).

55.    No other candidate in Georgia's gubernatorial race may chair a leadership committee ***unless and until*** he or she wins a political party's nomination in a primary election. *Id.* § 21-5-34.2(a).

56.    Georgia's primary election is scheduled to take place on May 19, 2026; a primary runoff is scheduled to be held on June 16, 2026, if necessary. Thus, as a result of the Challenged Provision, Lieutenant Governor Jones, as the incumbent

lieutenant governor, can materially out-raise and out-spend Jackson. That is, Lieutenant Governor Jones may chair a leadership committee—a de facto **second** campaign committee—raise funds from contributors in unlimited amounts, and use these unlimited funds to make expenditures benefitting his candidacy, while Jackson cannot chair a leadership committee and do the same thing. Meanwhile, Jackson— only allowed a single campaign committee—will **never** be able to raise and spend funds equally with Lieutenant Governor Jones during the primary election.

### FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### (First and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983)

57.    Jackson incorporates herein by reference paragraphs 1 through 56 above.

58.    The First Amendment, as applied to the states by the Fourteenth Amendment and enforced by 42 U.S.C. § 1983, guarantees protection of the freedom of association and the freedom of speech. Included within these protections is the right to participate freely in political activities, without the imposition of unequal campaign finance regulations that favor one candidate over others. *See Davis*, 554 U.S. at 737; *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 736–40 (2011).

59.    Georgia has long placed limitations on the amount of money a person may contribute to a candidate or campaign committee. *See* O.C.G.A. § 21-5-41(a)-

(b). Prior to 2022, these contribution limits applied equally to each candidate or campaign committee, regardless of incumbency.

60.     The Challenged Provision changes these even-handed campaign finance rules for the incumbent governor and lieutenant governor. The Challenged Provision grants to the incumbent lieutenant governor the ability to chair a leadership committee, which may accept *unlimited* contributions and make *unlimited* expenditures on behalf of Jones' candidacy, and which functions as an effective second campaign committee. *Id.* § 21-5-34.2(e). Jackson is permitted only a single campaign committee, is bound by the statutory contribution limits, and he may not chair a leadership committee and benefit from its largesse unless and until he wins the primary election and secures the nomination of a political party.

61.     As a result, the incumbent lieutenant governor enjoys the right to accept contributions—and spend them—in larger amounts than any other gubernatorial candidate in the 2026 Georgia primary election. Jackson must seek and obtain an untold number of unique, unaggregated campaign contributions, substantially undermining any chance he can obtain and expend the same amount of money as Lieutenant Governor Jones.[11]

---

[11] *Perdue v. Kemp*, 584 F. Supp. 3d at 1327–28 (*citing Davis*, 554 U.S. at 743–44) ("On the other hand, allowing Governor Kemp's re-election campaign to be the

62.    The Challenged Provision ensures that for purposes of the gubernatorial primary, Jackson will ***never*** be able to establish a leadership committee prior to the primary election and be able to compete on an equal fundraising and campaign spending footing with Lieutenant Governor Jones. That is, Jackson will not have the opportunity to promote his message and exercise his First Amendment rights to the same extent as Lieutenant Governor Jones in the primary election.

63.    The Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other," and the "unprecedented step of imposing different contribution . . . limits on candidates vying for the same seat is antithetical to the First Amendment." *Perdue v. Kemp*, 584 F. Supp. 3d at 1327–28 (*citing Davis*, 554 U.S. at 743–44). Accordingly, by removing any limitation on the campaign contributions the incumbent lieutenant governor may accept, while maintaining the contribution limits for all other gubernatorial primary candidates, the Challenged Provision violates Jackson's First Amendment rights to free speech and free association. *Id.* at 1323. The Challenged Provision's differential contribution limits further create an uneven and discriminatory campaign finance regime that, on its face, requires Jackson to

---

beneficiary of unlimited contributions raised through a leadership committee he chairs, while, at the same time, Perdue is restricted to the statutory limit of $7,600 by Georgia law is 'antithetical to the First Amendment.'").

expend additional effort to seek and obtain additional unique and unaggregated campaign contributions, and causes Jackson to expend limited funds and resources in an attempt to counter Lieutenant Governor Jones' effectively unlimited campaign speech.

64.    The increased contribution allowance for leadership committees—which is only available to incumbent gubernatorial and lieutenant gubernatorial candidates in a primary election—serves only to benefit those incumbents and serves no compelling, important, substantial, or legitimate state interest that justifies the burden placed by the Challenged Provision on the free exercise of First Amendment rights. Nor is such patent discrimination an appropriately tailored means of advancing any legitimate state interest.[12]

65.    Jackson has directly suffered, will continue to suffer, and is imminently threatened with suffering irreparable injuries to his freedom of speech and association under the First and Fourteenth Amendments of the U.S. Constitution by virtue of the Amendment's differential contribution limits.

---

[12] *Perdue v. Kemp*, 584 F. Supp. 3d at 1323–24 ("The Supreme Court consistently 'has identified only one legitimate governmental interest for restricting campaign finances: preventing corruption or the appearance of corruption.' *McCutcheon*, 572 U.S. at 206 (citing *Davis*, 554 U.S. at 741); *see also Citizens United*, 558 U.S. at 356 (same); *Fed. Election Comm'n. v. Nat'l Conservative Political Action Committee*, 470 U.S. 480, 496–97 (1985) (same); *Ala. Democratic Conf. v. Strange*, No. 5:11-CV-02449-JEO, 2011 WL 13233307, at * 10 (N.D. Ala. Dec. 14, 2011)).

## SECOND CLAIM FOR RELIEF[13]
**(Fourteenth Amendment, as enforced by 42 U.S.C. § 1983—Equal Protection)**

66.     Jackson incorporates herein by reference paragraphs 1 through 65 above.

67.     Under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, Jackson has the right to enjoy the equal protection of the law, especially where, as here, unequal treatment under the law burdens the exercise of the fundamental right to free speech under the First Amendment.

68.     An incumbent candidate and non-incumbent candidates are similarly situated as candidates for governor. Yet, the Challenged Provision treats the incumbent candidate unequally with respect to contribution limits, based solely on his or her status as an incumbent.

69.     This unequal treatment gives incumbent candidates a significant competitive advantage over other candidates running in the same election. There is

---

[13] While the Court in *Perdue v. Kemp* found that the plaintiffs were likely to succeed on the merits that the Challenged Provision was unconstitutional on First Amendment grounds, and thus, did not consider the merits of this argument, Plaintiffs assert this argument as additional support for injunctive relief. *See Perdue v. Kemp*, 584 F. Supp. 3d at 1327 n.10 ("Given that the Court has found that Plaintiffs are likely to succeed on the merits that O.C.G.A. § 21-5-34.2 is unconstitutional on First Amendment grounds, there is no need to consider whether Plaintiffs would succeed on the merits of their alternative equal protection challenge.").

no compelling, important, substantial, or legitimate state interest that justifies such patent discrimination against non-incumbent candidates.

70.    There is no compelling, important, substantial, or legitimate state interest that justifies the Challenged Provision's discriminatory distribution of benefits and disadvantages based solely on a candidate's status as an incumbent or a non-incumbent. Nor is such discrimination a least restrictive, narrowly tailored, direct, proportionate, or rational means of advancing any legitimate state interest.

71.    The Challenged Provision's uneven and discriminatory contribution limits, facially and as applied, violates Jackson's right to equal protection of the law under the Fourteenth Amendment and 42 U.S.C. § 1983.

72.    Jackson has directly suffered, will continue to suffer, or is imminently threatened with suffering irreparable injury to his rights by virtue of the Challenged Provision's disparate contribution limits as applied to him and Jones.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Jackson respectfully requests that this Court enter judgment in his favor and against Defendants, as follows:

A.    Declare that the Challenged Provision is unconstitutional both on its face and as applied to the Plaintiffs;

B.      Preliminarily and permanently enjoin the activity of any lieutenant gubernatorial leadership committee (including, without limitation, WBJ Leadership Committee, Inc.) established under O.C.G.A. § 21-5-34.2;

C.      Order WBJ Leadership Committee, Inc. to cease and desist from spending funds to further the gubernatorial candidacy of Jones, whether directly, or indirectly through monetary or in-kind contributions to Burt Jones for Governor, Inc.;

D.      Order Burt Jones for Governor, Inc. to not accept any contributions, whether monetary or in-kind, from WBJ Leadership Committee, Inc., and to refund any monetary contributions made to it by WBJ Leadership Committee, Inc, and reimburse any in-kind contributions made to it by WBJ Leadership Committee, Inc.;

E.      Award Jackson his allowable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 or any other basis in law, as appropriate; and

F.      Grant such further and additional relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Jame F. Bogan III*

| | |
|---|---|
| Adam H. Charnes | James F. Bogan III |
| Texas Bar No. 24090629 | Georgia Bar No. 065220 |
| *pro hac vice* forthcoming | Jeffrey H. Fisher |
| KILPATRICK TOWNSEND | Georgia Bar No. 981575 |
|    & STOCKTON LLP | Wade H. Barron |
| 2001 Ross Avenue | Georgia Bar No. 773706 |
| Suite 4400 | |
| Dallas, Texas 75201 | KILPATRICK TOWNSEND |
| Telephone (214) 922-7106 |    & STOCKTON LLP |
| Facsimile (214) 922-7101 | 1100 Peachtree Street, NE, Suite 2800 |
| acharnes@ktslaw.com | Atlanta, GA 30309 |
| | Telephone (404) 815-6500 |
| | Facsimile (404) 815-6555 |
| | jbogan@ktslaw.com |
| | jfisher@ktslaw.com |
| | whbarron@ktslaw.com |

*Counsel for Plaintiffs*

## VERIFICATION OF COMPLAINT

I, RICHARD L. JACKSON, declare as follows:

1.    I am a candidate for Governor of Georgia in 2026 seeking the

Republican nomination. Jackson for Georgia, Inc. is the campaign

committee in my campaign to become Governor of Georgia.

2.    The factual statements alleged in this Verified Complaint are true and

correct to the best of my knowledge and belief, based upon my

personal knowledge and my review of business and public records.

3.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true and correct.

This 10ᵗʰ day of February, 2026.

_____
RICHARD L. JACKSON