## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Richard L. Jackson; *et al.*,

              Plaintiffs,

    v.

William Burton Jones, in his personal capacity, and in his official capacity as the Lieutenant Governor of Georgia, *et al.*,

              Defendants.

Case No.  1:26-cv-782

**Plaintiffs' Motion for TRO and Request for Immediate Hearing, with Included Memorandum of Law**

Since Plaintiffs Richard L. Jackson and Jackson for Governor, Inc. (collectively, "Jackson") filed their Verified Complaint seeking injunctive and declaratory relief on February 10, Jackson has learned that WBJ Leadership Committee Inc. ("WBJ Leadership") is attempting to circumvent Jackson's First and Fourteenth Amendment rights by making massive financial expenditures on political advertising before the Court can consider the merits of Jackson's motion for preliminary injunction. On February 11—the day after Jackson filed the Complaint—WBJ Leadership made reservations for more than $2.26 million in advertising spots, nearly ***five times*** what WBJ Leadership had spent on advertising in the previous six months. If WBJ Leadership's advertisement purchases are allowed to stand, it will permit WBJ Leadership to evade justice and irreparably harm Jackson.

1

Jackson therefore respectfully requests that the Court issue a temporary restraining order, in accordance with Fed. R. Civ. P. 65, (1) enjoining WBJ Leadership from spending or raising any money in support of Lieutenant Governor Jones' Georgia gubernatorial campaign, and (2) ordering WBJ Leadership to cancel any advertising contracts entered into by WBJ Leadership after February 10, 2026 in support of Jones' gubernatorial campaign. In support of this TRO motion, Jackson incorporates by reference its February 11, 2026 Motion for Preliminary Injunction and supporting memorandum.

## BACKGROUND

On February 10, 2026, Jackson filed a Verified Complaint seeking declaratory and injunctive relief (including preliminary injunctive relief). The Verified Complaint challenges, under the First and Fourteenth Amendments, O.C.G.A. § 21-5-34.2, which authorizes certain incumbent candidates — including the incumbent lieutenant governor — to create a "leadership committee" exempt from Georgia campaign laws on contribution or coordination limits (the "Challenged Law").  Compl. [Dkt 1.] ¶¶ 52–72. The leadership committee specifically at issue here is WBJ Leadership, which registered with the Georgia State Ethics Commission (f/k/a the Georgia Government Transparency and Campaign Finance Commission) as a leadership committee, with Lieutenant Governor Jones serving as its chairperson. Dec. of Michael Zolnierowicz

("Zolnierowicz Declaration" or "Zolnierowicz Dec..") ¶ 3. Among other things, the Verified Complaint seeks to "preliminarily and permanently enjoin the activity of any lieutenant gubernatorial leadership committee (including, without limitation, WBJ Leadership Committee, Inc.)" and "[o]rder WBJ Leadership Committee, Inc. to cease and desist from spending funds to further the gubernatorial candidacy of Jones, whether directly, or indirectly." Compl., p. 24.

Since the filing of the Verified Complaint on February 10, WBJ Leadership has engaged in an unusual ad-buying spree that appears to be intended to spend or commit to spend substantial sums possessed by WBJ Leadership and thus undermine the Court's ability to provide a remedy through the issuance of a preliminary injunction. Zolnierowicz Dec. ¶ 5.

On February 11, 2026, the day after the Verified Complaint was filed, AdImpact—a prominent media intelligence and analytics company that tracks campaign advertising—alerted Jackson's political consultant that WBJ Leadership made reservations for more than $2.26 million in linear broadcast advertising spots in support of Lieutenant Governor Jones' gubernatorial campaign for the period of February 16, 2026 to March 29, 2026. *Id.* ¶¶ 2, 6-7. Prior to the recent spending spree, WBJ Leadership had spent a total of only $456,911 since August 2025. *Id.* ¶ 6. This uptick in media spending is telling.

3

The AdImpact graphic below shows that WBJ Leadership expended a total of $456,911 on advertising reservations over a period exceeding 6 months between August 1, 2025, and February 15, 2026. *Id.* ¶ 8. All of these expenditures were allocated to ad reservations for the week of February 3, 2026 through February 10, 2026. *Id.*



*Id.*

In stark contrast, WBJ Leadership expended a total of $2,267,490 on advertising reservations for the period spanning February 16, 2026, through May 9, 2026—nearly five times its spend for the prior six months. *Id.* ¶ 9.



On February 12, I received an alert that WBJ Leadership expended over $600,000 on advertising reservations for the period spanning March 30 2026, through May 18, 2026. *Id.* ¶ 10.

In addition to the quantum of this monetary spend, WBJ Leadership's February 11-12 spending spree is also unusual because, in the past, WBJ Leadership reserved advertising only for single 7-day periods. But on February 11 and, WBJ Leadership reserved time over an extended 12-week period. *Id.* ¶ 11.

Political campaigns typically reserve advertising time in fixed, seven-day increments, with the option to make reservations for any upcoming week, subject to availability. *Id.* ¶ 12. Payment for each reserved weekly period is ordinarily processed 24 hours before the start of that period. *Id.* Campaigns retain the flexibility to reserve ad time for multiple future weeks in advance, facilitating strategic planning and inventory security. *Id.* ¶ 13. Importantly, any reservation

may be cancelled without penalty so long as the cancellation occurs before the funds are processed. *Id.*

If WBJ Leadership followed standard practice for buying political ads, as of February 11, 2026, none of the $2,267,490 in advertising reservations placed by WBJ Leadership for the February 16 through May 9, 2026 period would have been processed for payment or otherwise matured into a binding financial commitment. *Id.* ¶ 14.

The Court should temporarily restrain and enjoin WBJ Leadership's expenditure of these funds pending a ruling on Jackson's motion for preliminary injunction.

## ARGUMENT

### I.    A TRO is Demanded to Maintain the Status Quo Before the Court Rules on Jackson's Motion for Preliminary Injunction.

Jackson seeks a TRO enjoining WBJ Leadership from spending or raising any money in support of Jones' Georgia gubernatorial campaign, and requiring WBJ Leadership to cancel any advertising contracts it entered after February 10, 2026 in support of Jones' campaign. Because Jackson can satisfy the requirements for a TRO, and because a TRO is necessary to preserve the status quo until the Court can rule on Jackson's preliminary injunction motion, the Court should grant Jackson's motion.

"The standard for the issuance of a temporary restraining order and a preliminary injunction are identical." *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1320 (N.D. Ga. 2020). Specifically, to obtain a TRO, a movant must show (1) "a substantial likelihood that he will prevail on the merits," (2) "that he will suffer irreparable injury unless the injunction issues;" (3) "that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;" and (4) "that the injunction, if issued, would not be adverse to the public interest." *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 3d 1371, 1374 (N.D. Ga. 2001).

Jackson previously filed a motion for preliminary injunction (Dkt. 12), which will not be repeated here and which is incorporated herein by reference. In addition, the more immediate remedy of a TRO is demanded here to preserve the viability of Jackson's preliminary injunction motion – one that enjoins WBJ Leadership from spending money in support of Jones' gubernatorial campaign and cancels any advertising contracts entered into by WBJ Leadership after February 10, 2026. Such relief is critically important because it would maintain the status quo until the Court has time to consider Jackson's preliminary injunction motion.

As this Court has made clear, "[c]ourts have long held that the status quo for the purpose of considering a temporary restraining order or preliminary injunction refers to the last peaceable uncontested status existing between the parties before

7

the dispute developed." *Doe 1 v. Bondi*, 785 F. Supp. 3d 1268, 1287–88 (N.D. Ga. 2025).

Here, the evidence shows that a day after Jackson filed its Verified Complaint, WBJ Leadership spent millions of dollars on broadcast advertisements in different Georgia media markets. Zolnierowicz Dec. ¶¶ 6-10. WBJ Leadership thus is actively seeking to thwart the Court's ability to provide a remedy to Jackson, by using its cash to buy up ads before the Court can issue a ruling on the preliminary injunction motion. Allowing these ad purchases to remain in place would perpetuate a set of circumstances that irreparably harms Jackson before the issues can be evaluated on the merits, as prohibited by Circuit precedent. *See Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ("If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury . . . by returning to the last uncontested status quo."). Accordingly, the Court should grant the requested TRO, so that both parties are in the same position as before Jackson filed its Verified Complaint.

## II.    Plaintiffs Request an Immediate Hearing.

In accordance with Local Rules 7.2(b) and 65.2, Jackson requests that the Court waive the normal time requirements specified under the Local Rules and grant an expedited hearing on its TRO motion. As detailed above, WBJ

Leadership's efforts to buy up ads before the Court can rule on Jackson's motion for preliminary injunction inflicts irreparable harm on Jackson. The violations of Jackson's First and Fourteenth Amendment rights will continue to occur without immediate action on this TRO motion, a course of conduct that significantly undermines Jackon's ability to spread his campaign message in the same manner as Jones, and puts it at on ongoing, day-to-day competitive disadvantage in the gubernatorial race. As such, Jackson respectfully requests that the Court grant an immediate hearing on this TRO motion.

## CONCLUSION

For the foregoing reasons, the Court should schedule an immediate hearing and then issue a TRO (1) immediately enjoining WBJ Leadership from raising and spending any money in support of Lieutenant Governor Jones' Georgia gubernatorial campaign, and (2) ordering WBJ Leadership to cancel any advertising contracts entered into by WBJ Leadership that support Jones's campaign.

Respectfully submitted this 12th day of February, 2026.

|  | */s/ Jame F. Bogan III* |
|---|---|
| Adam H. Charnes | James F. Bogan III |
| Texas Bar No. 24090629 | Georgia Bar No. 065220 |
| *pro hac vice* forthcoming | Jeffrey H. Fisher |
| KILPATRICK TOWNSEND | Georgia Bar No. 981575 |
|    & STOCKTON LLP | Wade H. Barron |
| 2001 Ross Avenue | Georgia Bar No. 773706 |
| Suite 4400 | |
| Dallas, Texas 75201 | KILPATRICK TOWNSEND |
| Telephone (214) 922-7106 |    & STOCKTON LLP |
| Facsimile (214) 922-7101 | 1100 Peachtree Street, NE, Suite 2800 |
| acharnes@ktslaw.com | Atlanta, GA 30309 |
| | Telephone (404) 815-6500 |
| | Facsimile (404) 815-6555 |
| | jbogan@ktslaw.com |
| | jfisher@ktslaw.com |
| | whbarron@ktslaw.com |
| | |
| | *Counsel for Plaintiffs* |

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated:  February 12, 2026.

/s/<i>Jame F. Bogan III</i>
James F. Bogan III

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of February, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Additionally, I hereby further certify that I will caused the foregoing to be served upon all named defendants by email and by hand service.

<i>/s/ Jame F. Bogan III</i>
James F. Bogan III
