IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD L. JACKSON, et al.,

      Plaintiffs,

           v.

WILLIAM BURTON JONES, in his
personal capacity, and in his official
capacity as the Lieutenant Governor of
Georgia, et al.,

      Defendants.

CIVIL ACTION FILE
NO. 1:26-CV-782-TWT

## OPINION AND TEMPORARY RESTRAINING ORDER

This is a civil rights action. It is before the Court on Plaintiffs Richard L. Jackson and Jackson for Governor, Inc.'s Motion for Temporary Restraining Order [Doc. 14]. For the reasons that follow as well as those stated on the record at the February 20, 2026 hearing on the motion, the Plaintiffs' Motion for Temporary Restraining Order [Doc. 14] is GRANTED.

### I.  Background

This case addresses yet another constitutional challenge to O.C.G.A. § 21-5-34.2 (the "LC Statute"). 2026 is an election year in Georgia for the position of Governor. Candidates for state-wide offices are generally subject to certain contribution limits imposed by Georgia law. Specifically, Georgia law provides that a candidate and their campaign committees may not "receive from any [person, corporation, political committee, or political party]

contributions . . . which in the aggregate for an election cycle exceed" $8,400 for the primary election and $4,800 for the primary runoff election. O.C.G.A. § 21-5-41(a); (*See* Compl. ¶¶ 10, 10 n.1, 50 [Doc. 1]).

But in 2021, the Georgia Legislature passed a law allowing certain candidates to circumvent the limits imposed by O.C.G.A. § 21-5-41. *See* Ga. Laws 2021, Act. 219 eff. July 1, 2021. Now codified as the LC Statute, the law allows for the creation of "leadership committees" to operate within certain Georgia statewide elections, subject to regulations. *See* O.C.G.A. § 21-5-34.2. A "leadership committee" may only be created by and chaired by the Governor, the Lieutenant Governor, or the nominee of a political party for Governor or Lieutenant Governor. O.C.G.A. § 21-5-34.2(a); (*see* Compl. ¶ 9). These "leadership committees" may receive contributions and make contributions toward certain candidates' election campaigns without any dollar limitation that would otherwise be imposed by O.C.G.A. § 21-5-41. O.C.G.A. § 21-5-34.2(d), (e); (*See* Compl. ¶¶ 11-12).

In the 2026 Georgia gubernatorial election, Defendant William Burton Jones, the current Lieutenant Governor of Georgia, is seeking the Republican nomination for Governor.[1] (*See* Compl. ¶ 28). In 2022, Defendant Jones organized a leadership committee, Defendant WBJ Leadership Committee,

---

[1] Defendant Brian Kemp, the current Governor of Georgia, is ineligible for re-election. Ga. Const. Art. V, § 1.

2

Inc. ("WBJLC"). (*Id.* ¶ 14). Since the creation of Defendant WBJLC, the leadership committee has been permitted to raise unlimited contributions from donors. (*Id.*). As of June 30, 2025, Defendant WBJLC reported a $14,299,337.43 ending monetary balance. (*Id.* ¶ 14 n.3). Furthermore, Defendant WBJLC has received multiple contributions of $100,000. (*Id.*). Defendant Jones has been tapping into the funds collected by Defendant WBJLC to facilitate his campaign for Governor. (*See id.* ¶ 15). Plaintiff Richard L. Jackson is a new entrant to the Republican primary in the last month. (*See id.* ¶¶ 15, 21). As a candidate for Governor, Plaintiff Jackson is subject to the contribution limits imposed by O.C.G.A. § 25-1-41 and is not entitled to create a "leadership committee" as a private citizen. (*See id.* ¶ 16).

To remedy this alleged inequality, the Plaintiffs filed this Complaint with the Court, seeking declaratory and injunctive relief under the First and Fourteenth Amendments against the Defendants. (*See id.* ¶¶ 57-72). Specifically, the Plaintiffs argue that the LC Statute is unconstitutional because it imposes an unequal playing field within the Republican primary, where Defendant Jones may circumvent contribution limits while Plaintiff Jackson is still subject to them. (*See id.*). A day later, the Plaintiffs filed an Emergency Motion for Preliminary Injunction. (*See generally* Pls.' Emergency Mot. for Prelim. Inj. [Doc. 12]).

The Plaintiffs then filed their Motion for Temporary Restraining Order before the Court, requesting an immediate hearing. (*See generally* Pls.' Mot. for Temp. Restraining Or. [Doc. 14]). In the attached briefing, the Plaintiffs requested a temporary restraining order ("TRO") because, since filing their Complaint, Defendant WBJLC made reservations for more than $2.26 million in linear broadcast advertising spots in support of Defendant Jones's campaign, which is a marked uptick in campaign spending from Defendant WBJLC compared to the Defendant's spending prior to the filing of the Complaint.[2] (*See* Br. in Supp. of Pls.' Mot. for Temp. Restraining Or., at 4-5 [Doc.14]). The Plaintiffs seek a TRO that (1) immediately enjoins Defendant WBJLC from raising and spending any money in support of Defendant Jones's Georgia gubernatorial campaign and (2) orders Defendant WBJLC to cancel any advertising contracts entered into by Defendant WBJLC that support Defendant Jones's campaign. (*See id.* at 9). The Court held a hearing on the TRO on February 20, 2026 and granted the Plaintiffs' motion from the bench with this written order to follow.

## II.  Legal Standards

A TRO is a drastic remedy that should be granted only in limited circumstances and upon a showing of clear necessity. *McDonald's Corp. v.*

---

[2] Prior to the filing of the Plaintiffs' Complaint, Defendant WBJLC only spent $456,911 on the Jones campaign. (*See* Br. in Supp. of Pls.' Mot. for Temp. Restraining Or., at 4-5 [Doc.14]).

*Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "The standard for the issuance of a temporary restraining order and a preliminary injunction are identical." *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1320 (N.D. Ga. 2020) (citing *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010)). The movant must show that (1) its claims have a substantial likelihood of success on the merits; (2) it will suffer irreparable injury absent injunctive relief; (3) the threatened injury to the movant outweighs any potential harm that might result to the opposing party; and (4) granting the injunction will not disserve the public interest. *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014). The movant must "clearly establish" all four elements. *Cafe 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993).

### III. Discussion

#### A. Standing

Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. Art. III, § 2). This means that any plaintiff filing a complaint in federal court must establish that they have standing to sue within the complaint. *Id.* at 1365-66 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). A plaintiff must demonstrate three elements to establish Article III standing: "[t]he plaintiff

must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1366 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Standing is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation modified). "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Id.* (citation modified).

### 1. Injury in Fact

"To establish an injury in fact, the plaintiff must demonstrate that he suffered 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "An injury is particularized when it 'affects the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n. 1). "To be concrete, the injury must be 'real, and not abstract.'" *Id.* (quoting *Spokeo, Inc.*, 578 U.S. at 340).

Here, the injury in fact alleged in the Complaint arises out of a violation of the First Amendment as recognized in *Davis*. In *Davis*, the Supreme Court considered a constitutional challenge to Section 319(a) of the Bipartisan Campaign Reform Act of 2002, otherwise known as the "Millionaire's Amendment." *See Davis*, 554 U.S. at 729. The Millionaire's Amendment

provided that, when a candidate used personal funds in excess of $350,000 in their campaign, an opposing candidate could receive individual contributions three times the normal limit and could accept coordinated party expenditures without any limit. *See id.* In considering whether the candidate had standing to challenge the Millionaire's Amendment, the Supreme Court found that he satisfied the injury in fact element of standing because the operation of the statute would allow "his opponent to receive contributions on more favorable terms" after he had declared his candidacy. *Id.* at 734.

Similarly, the Court is satisfied that the Plaintiffs have met their burden in showing that they have suffered injury in fact. On similar challenges to the LC statute, every court addressing a candidate-plaintiff's standing concludes that he suffers a qualifying injury when he is confronted with an uneven electoral playing field between incumbents and non-incumbents. *See One Ga., Inc. v. Carr*, 601 F. Supp. 3d 1291, 1302 (N.D. Ga. 2022) (relying on *Davis* to hold an injury in fact exists when one candidate can establish a leadership committee under the LC Statute while the other candidate may not and is subject to the traditional contribution limits); *Perdue v. Kemp*, 584 F. Supp. 3d 1310, 1319 (N.D. Ga. 2022) (relying on *Davis* to hold the same as to primary elections); *Graham v. Carr*, 634 F. Supp. 3d 1343, 1351-52 (N.D. Ga. 2022), *vacating as moot sub nom.*, *Graham v. Att'y Gen., State of Ga.*, 110 F.4th 1239 (11th Cir. 2024) (relying on *Davis* to hold the same as to general

7

elections); *Carr v. WBJ Leadership Comm.*, No. 25-cv-04426-VMC, at 10-14
(N.D. Ga. Aug. 28, 2025), ECF No. 22 (relying on *One Ga.* and *Perdue* to
conclude the same).

The Defendants advocate for a narrower reading of *Davis*, arguing that
an injury in fact only exists if a candidate exercised his own First Amendment
rights to a certain degree like the candidate in *Davis*. (*See* Defs.' Br. in Opp'n
to Pls.' Mot. for Temp. Restraining Or., at 10-11). But the Court finds no reason
to depart from previous holdings in this District. The Court's interpretation of
*Davis* on this issue comports with the reasons enumerated in *Perdue* and *One
Ga.*. Therefore, the Court finds that the Plaintiffs have alleged sufficient injury
in fact.

### 2. Traceability

"To satisfy the traceability requirement, a plaintiff must establish a
'causal connection between the injury and the conduct complained of.'"
*Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 926 (11th Cir. 2023)
(quoting *Lujan*, 540 U.S. at 560). "Proximate causation is not a requirement of
Article III standing." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th
Cir. 2019) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572
U.S. 118, 134 n. 6 (2014) (citation modified)). "A plaintiff therefore need not
show (or, as here, allege) that 'the defendant's actions are the very last step in
the chain of causation.'" *Id.* at 1126 (quoting *Bennett v. Spear*, 520 U.S. 154,

168-69 (1997)). The Defendants contend that the Plaintiffs cannot demonstrate traceability because there are no actions taken by Defendant WBJLC that are illegal or improper under the LC Statute. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 11).

The Court is unpersuaded and instead finds Judge Cohen's decision in *Perdue* compelling. In *Perdue*, the plaintiff, a candidate for the Georgia Republican gubernatorial primary election, brought a constitutional challenge against the LC Statute and sought a preliminary injunction against a leadership committee established by Governor Kemp, prohibiting the committee from making future expenditures. *See Perdue*, 584 F. Supp. 3d at 1315-17. When considering the traceability requirement of Article III standing, Judge Cohen held that the plaintiff satisfied this element because the LC Statute permitted Governor Kemp to take advantage of an "inequitable scheme" and raise funds "not subject to the individual contribution limits established by O.C.G.A. § 21-5-41(a), while [the plaintiff] remains subject to those limits in the same primary election." *Id.* at 1320. Like *Perdue*, the facts in this case show a primary challenger in a gubernatorial race hamstrung by the "inequitable scheme" created by the LC Statute, where Defendant Jones can raise money for his campaign without restriction through Defendant WBJLC while Plaintiff Jackson is subject to the contribution limits imposed by O.C.G.A. § 21-5-41(a).

Still, the Defendants urge the Court to look to Judge Calvert's decision in *Carr* to support their position that the Plaintiffs' injuries cannot be traceable to the Defendants because WBJLC is the only party to the motion. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 12-13). This approach misconstrues Judge Calvert's decision in *Carr*. There, the Attorney General of Georgia, in his personal capacity, brought suit as a candidate in the Republican primary for governor against only Defendants Jones, WBJLC, and Burt Jones for Georgia, Inc. challenging the LC Statute. *Carr*, No. 25-cv-04426-VMC, at 7. Judge Calvert held that the traceability requirement was not satisfied because the complaint failed to include any government officials or any claim that the LC Statute should be invalidated. *See id.* at 15-16. Indeed, part of the reason the plaintiffs failed to satisfy the traceability requirement is because the defendants were doing exactly as Georgia law allowed them to do. *Id.* at 14.

This is not the case here. The Plaintiffs have sued the three Defendants in *Carr* along with numerous state officials in charge of enforcing the LC Statute. Thus, the Plaintiffs' injury is traceable to actions of the parties in this case, unlike in the facts underlying *Carr*. It is irrelevant that WBJLC is the only party to the motion because Article III standing is not evaluated on a motion-by-motion basis but is instead evaluated on a claim-by-claim basis. *See Davis*, 554 U.S. at 734; (Feb. 20, 2026 Hearing at 18:22-19:8). Thus, the Plaintiffs have satisfied the second requirement of standing.

### 3.  Redressability

"Finally, [the Court] address[es] redressability, the third and final requirement of Article III standing. To satisfy this requirement, a plaintiff needs to show that 'it must be likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Garcia-Bengochea*, 57 F.4th at 927 (quoting *Lujan*, 540 U.S. at 561 (citation modified)).

The Court again is persuaded by Judge Cohen's decisions in *Perdue* and *One Ga.* on the issue of redressability. In both cases, Judge Cohen held that enjoining the leadership committees from spending more money in favor of Governor Kemp's campaign would redress the plaintiffs' injury and place the parties on a level playing field where both candidates are subject to the statutory maximum for contributions. *See Perdue*, 584 F. Supp. 3d at 1320; *One Ga.*, 601 F. Supp. 3d at 1303-04. Entering a TRO against Defendant WBJLC enjoining further expenditures in favor of Defendant Jones's gubernatorial campaign will have the same effect.

It is irrelevant to the issue before the Court whether other leadership committees are capable of harming the Plaintiffs or if an injunction results in more or less spending to the parties' campaigns, as the Defendants contend. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 12-13). The continued spending of Defendant WBJLC in favor of Defendant Jones's campaign in excess of the proscribed limits imposed by O.C.G.A. § 21-5-41(a)

is the harm remedied by the entry of an injunction. Ultimately, if the Plaintiffs succeed in obtaining their declaratory and injunctive relief, the harm posed by the LC Statute will cease and the electoral playing field will be leveled. Thus, the Plaintiffs' Complaint demonstrates that they have satisfied all three elements necessary for Article III standing.

### B. Likelihood of Success on the Merits

To establish a substantial likelihood of succeeding on the merits, a plaintiff must "demonstrate a likelihood of success at trial as to both its *prima facie* case and the affirmative defenses asserted by the defendant." *eCapital Com. Fin. Corp. v. Hitachi Cap. America Corp.*, 519 F. Supp. 3d 1129, 1134 (S.D. Fla. 2021) (citation modified). The Defendants make several arguments against the Plaintiffs' motion on this factor. The Court addresses them as they arise in its analysis.

#### 1. State Actor

Turning to the substantive arguments, the Defendants argue that the Plaintiffs cannot clearly establish a substantial likelihood of success on the merits because Defendant WBJLC is not a state actor, which the Plaintiffs must prove to prevail under 42 U.S.C. § 1983. (Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 13). Section 1983 imposes liability on "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be subjected . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws." 42 U.S.C.
§ 1983. "To state a claim for relief in an action brought under § 1983, plaintiffs
must establish that they were deprived of a right secured by the Constitution
or laws of the United States, and that the alleged deprivation was committed
*under color of state law*." *Focus on the Family v. Pinellas Suncoast Transit
Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003) (emphasis added) (quoting
*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citation
modified)). "Like the state-action requirement of the Fourteenth Amendment,
the under-color-of-state-law element of § 1983 excludes from its reach merely
private conduct, no matter how discriminatory or wrongful." *Id.* at 1277
(quoting *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50 (quotation marks
omitted)).

Under guidance from the Supreme Court, the Eleventh Circuit has set
forth three primary tests to determine whether a private party is involved in
state action for the purposes of Section 1983: "(1) the public function test;
(2) the state compulsion test; and (3) the nexus/joint action test." *Id.* (citation
omitted). "The nexus/joint action test applies where the state has so far
insinuated itself into a position of interdependence with the private party that
it was a joint participant in the enterprise." *Id.* (citation modified). "[A court]
must determine on a case-by-case basis whether sufficient state action is
present from a non-state actor (defendant) to sustain a section 1983 claim." *Id.*

13

(citation omitted). "To charge a private party with state action under this standard, the governmental body and private party must be intertwined in a symbiotic relationship. The Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Id.* at 1278 (citation modified). "Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation modified).

Judge Cohen's holding in *One Ga.* is instructive in determining whether state action exists under the nexus/joint action test. There, Judge Cohen was confronted with the issue of whether Governor Kemp's leadership committee was a state actor for the purposes of the plaintiffs' Section 1983 claim. After reviewing the LC Statute, the court concluded that the operation of the leadership committee satisfied the nexus/joint action test. *See One Ga.*, 601 F. Supp. 3d at 1308-09. Specifically, Judge Cohen noted that the LC Statute required a leadership committee to be chaired by the Governor in the case of Governor Kemp, and, if he left his position, Governor Kemp would be required to effectively dissolve the leadership committee. *See id.* at 1308 (citing O.C.G.A. §§ 21-5-34.2(a), (c)). Because Governor Kemp's leadership committee required him to chair the committee, Judge Cohen concluded that Governor Kemp had "so far insinuated himself into a position of interdependence with the [leadership committee] that he [was] a joint participant in the enterprise."

14

*Id.* (quoting *Rayburn*, 241 F.3d at 1348 (citation modified)).

Similarly, Defendant WBJLC contains all the hallmarks of satisfying the nexus/joint action test. At this stage in the Republican primary election, the only candidate in the election permitted to form a leadership committee is Defendant Jones, as Lieutenant Governor of the State of Georgia. Without Defendant Jones chairing Defendant WBJLC, the leadership committee would be required to dissolve and transfer its assets to another leadership committee. *See* O.C.G.A. § 21-5-34.2(c). Alternatively, the LC Statute requires Defendant Jones to name another eligible person as the new chairperson for Defendant WBJLC. *See id.* But the only other individual who could chair Defendant WBJLC at this stage of the election is Governor Kemp, because there will not be official nominees for any party until the conclusion of the primary elections on May 9, 2026.

Still, the Defendants argue that the nexus/joint action test cannot be satisfied, comparing Defendant WBJLC to a series of cases where the Supreme Court and the Eleventh Circuit have ruled that the test had been satisfied. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or, at 14-15). Yet, leadership committees like Defendant WBJLC have no analogue. Georgia's LC Statute stands alone in the structure and operation of its "leadership committees." It is difficult to argue that leadership committees, which may only be chaired by the leaders of the executive branch, are not intertwined in

a symbiotic relationship with the State of Georgia. *See Focus on the Family*, 344 F.3d at 1278. Defendant WBJLC lends its entire existence to the participation of the Lieutenant Governor of the State of Georgia. Meanwhile, Defendant Jones gains the benefit of being able to use the entity to circumvent the contribution rules applicable to every other primary candidate by receiving unlimited contribution funds, as well as coordinating Defendant WBJLC's expenditures. Thus, the Court concludes that Defendant WBJLC is a state actor for the purposes of the Plaintiffs' claims under Section 1983.

### 2. Substantive Arguments

Under the Complaint, the Plaintiffs allege two Section 1983 counts against the Defendants. (*See* Compl. ¶¶ 57-72). The first count requests declaratory and injunctive relief under the First Amendment, as applied to the states by the Fourteenth Amendment. (*See id.* ¶¶ 57-65). The second count asserts an equal protection claim under the Fourteenth Amendment. (*See id.* ¶¶ 66-72). The Court need not address the second count because the Court concludes that the Plaintiffs have a substantial likelihood of success on the merits of their First Amendment claim.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment applies to Georgia through the Due Process Clause of the Fourteenth Amendment. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th

Cir. 2004) (citing *Near v. Minn.*, 283 U.S. 697, 707 (1931)). "The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Perdue*, 584 F. Supp. 3d at 1322 (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 480 U.S. 214, 223 (1989) (citation modified)). "Spending for political ends and contributing to political candidates both fall within the First Amendment's protection of speech and political association." *Id.* (quoting *Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 440 (2001)). But the Supreme Court routinely sustains "the facial constitutionality of limits on discrete and aggregate individual contributions and on coordinated party expenditures." *See Davis*, 554 U.S. at 737.

When confronted with such a statute that implicates First Amendment interests, the Supreme Court has held that the statute cannot stand unless it is "closely drawn" to serve a "sufficiently important interest," such as preventing corruption or the appearance of corruption. *Id.* This standard is considered to be less exacting than strict scrutiny, allowing "a measure of deference to the judgment of the legislative body that enacted the law." *Id.*; *Ala. Democratic Conf. v. Att'y Gen. of Ala.*, 838 F.3d 1057, 1063 (11th Cir. 2016). The burden of this showing is on the State, not the Plaintiff. *See Ala Democratic Conf.*, 838 F.3d at 1063.

Yet, the Defendants fail to make any such showing within their response brief and omit any discussion on the merits of the Plaintiff's First Amendment claim. But even if the Defendants had attempted to carry their burden, the Court is bound by *Davis*. There, the Supreme Court explicitly stated that the court "ha[s] never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis*, 554 U.S. at 738. The Supreme Court further remarked that "imposing different contribution and coordinated party expenditure limits on candidates vying for the same seat is antithetical to the First Amendment." *Id.* at 743-44. The three prior cases within this District addressing the constitutionality of the LC Statute all apply *Davis* to ultimately conclude that the statute likely runs afoul of the First Amendment. *See Perdue*, 584 F. Supp. 3d at 1321-27; *One Ga.*, 601 F. Supp. 3d at 1304-07; *Graham*, 634 F. Supp. 3d at 1354-56.

The Court sees no reason to depart from Judge Cohen's prior holdings. The LC Statute creates the exact scheme the Supreme Court has explicitly disavowed by imposing different contribution limits for candidates vying for the Republican nomination for Governor of Georgia. Defendant Jones may take advantage of leadership committees, while Plaintiff Jackson is subject to the stricter campaign contribution limits imposed by O.C.G.A. § 21-5-41(a). Furthermore, the Defendants can point to no underlying purpose behind the LC Statute arising out of a need to combat corruption because the statute has

18

no such purpose. Therefore, the Court concludes that the LC Statute is likely unconstitutional.

### 3. Unclean Hands

In a last-ditch effort, the Defendants argue that the equitable doctrine of unclean hands bars the Plaintiffs from the relief they seek in their Complaint because Plaintiff Jackson allegedly spent millions of dollars in support of his campaign prior to announcing his candidacy, in violation of state campaign finance law. (*See* Defs.' Br. in Opp'n. to Pls.' Mot. for Temp. Restraining Or., at 17). To demonstrate that a party is entitled to the defense of unclean hands, a defendant must show that "(1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). Assuming such allegations are true, Plaintiff Jackson's conduct would not entitle the Defendants to an unclean hands defense because his alleged wrongdoing is not directly related to his First Amendment claim. Therefore, the Defendants' argument fails, and the Court concludes that the Plaintiffs are substantially likely to prevail on the merits of their claims.

### C. Irreparable Harm

"A showing of irreparable injury is 'the sine qua non of injunctive relief.' " *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation modified). "[E]ven if [the] Plaintiffs establish a likelihood of success of the merits, the

absence of a substantial likelihood of irreparable injury would, standing alone, make [ ] injunctive relief improper." *Id.* "An injury is irreparable 'if it cannot be undone through monetary remedies.' " *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). "[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.' " *Siegel*, 234 F.3d at 1176-77 (citation omitted).

Not every violation of constitutional rights constitutes irreparable harm. *Id.* at 1177. Nonetheless, violations of the First Amendment often satisfy this standard. In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court explicitly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373. Applying this standard, the Eleventh Circuit has held that violations of the First Amendment constitute irreparable harm to the Plaintiffs where there is an "imminent likelihood that pure speech will be chilled or prevented altogether." *Siegel*, 234 F.3d at 1178. This is because "chilled free speech . . . , because of its intangible nature, could not be compensated for by monetary damages; in other words, plaintiffs could not be made whole." *Scott*, 612 F.3d at 1295 (citation modified).

Because the Court has found that the Plaintiffs are substantially likely to succeed on their First Amendment claim, the Plaintiffs have demonstrated irreparable harm. The continued expenditures of Defendant WBJLC in favor

20

of Defendant Jones's campaign are only permitted under the LC Statute and would be barred by the campaign finance rules of O.C.G.A. § 21-5-41(a). This includes the contracts entered into after the Plaintiffs filed their Complaint with the Court. The operations of Defendant WBJLC, permitted by the LC Statute, have violated and continue to violate the Plaintiffs' First Amendment right of free speech. Therefore, there is a very real and imminent likelihood that the Plaintiffs' speech will be chilled under the LC Statute. *See Siegel*, 234 F.3d at 1178.

Yet, the Defendants argue that Plaintiff Jackson and Plaintiff Jackson for Governor, Inc. cannot establish that any speech was chilled because Plaintiff Jackson has allegedly stated that he need not rely on campaign contributions to prevail in his candidacy. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 8). Additionally, the Defendants highlight that Plaintiff Jackson has spent his own personal funds through Plaintiff Jackson for Governor, Inc. and has already spent or plans to spend $29.08 million on television advertising. (*See id.* at 8-9; Feb. 20, 2026 Hearing at 30:06-30:10). At the February 20, 2026 hearing, the Defendants further emphasized the size of this spending in comparison to prior Republican primaries, showing that the total spend on television advertisements in the 2022 Republican gubernatorial primary was $35.6 million.[3] (*See* Feb. 20, 2026 Hearing at 30:11-30:13).

---

[3] To further illustrate their point, the Defendants presented a

While the facts understandably do not paint a favorable impression of the Plaintiffs' claim that their speech was chilled by the LC Statute, the Court still finds injury to Plaintiff Jackson. First, as the Plaintiffs highlighted both at the February 20, 2026 hearing and in their reply brief, the Defendants take Plaintiff Jackson's quote about contributions out of context. These comments were in relation to money coming from the Georgia political establishment and were not in the context of contributions in general.[4] (*See* Reply Br. in Supp. of Pls.' Br. in Supp. of Mot. for Temp. Restraining Or., at 2 [Doc. 39]; Feb. 20 Hearing at 8:20-9:21). This added context is further supported by the fact that Plaintiff Jackson for Governor, Inc. continues to seek contributions from supporters. (*See* Reply Br. in Supp. of Pls.' Br. in Supp. of Mot. for Temp. Restraining Or., at 2 (citing Zolnierowicz Supp. Decl. ¶ 9)). As such, the variable contribution limits between the campaigns have the effect of continuously and imminently chilling speech.

_____

demonstrative PowerPoint to supplement their oral argument at the February 20, 2026 hearing. The demonstrative showed that Defendant WBJLC spent around $9.3 million in 2026, compared to the $29.08 million spent by the Plaintiffs' campaign. In a pie chart, the Defendants showed that the Plaintiffs are responsible for around 76% of expenditures related to ad buys in 2026, while Defendant WBJLC has spent 24%.

[4] The Court is unable to access the article containing the disputed quote and context by Plaintiff Jackson. However, the Defendants do not appear to dispute the added context provided by the Plaintiffs. Thus, the Court will consider the Plaintiffs' added context despite not being able to access the article itself.

Second, the Court finds no reason to penalize Plaintiff Jackson in the exercise of his First Amendment right to contribute to his own campaign. Indeed, previous decisions by the Supreme Court have emphasized "the fundamental nature of the right to spend personal funds for campaign speech." *See Davis*, 554 U.S. at 738-39 (discussing *Buckley v. Valeo*, 424 U.S. 1, 52-54 (1976) and finding that the decision emphasized the fundamental right to spend personal funds on a campaign). That is exactly the fundamental right which Plaintiff Jackson exercises here while being injured by the unequal electoral playing field created by the LC Statute. Furthermore, if the LC Statute is later declared unconstitutional as to its application to Defendant Jones's campaign, it may reduce the necessity for Plaintiff Jackson to spend on his own campaign because Defendant Jones would be subject to the same requirements as to his campaign. Therefore, the Court finds that the Plaintiffs have satisfied the irreparable harm factor.

## D. Balance of Harms

The third factor requires a court to "weigh whether the defendant is harmed more by the issuance of injunctive relief than the plaintiff is harmed by not entering an injunction." *DJR Assocs., LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1231 (N.D. Ala. 2017); *see Swain v. Junior*, 958 F.3d 1081, 1090-91 (11th Cir. 2020) (discussing the lower court's application of the factor and finding error in the balancing test where the lower court balanced harm to the

plaintiff generally, instead of harm to the plaintiff without an injunction).

The harm to the Plaintiffs without TRO relief is clear. The Plaintiffs are harmed by the unconstitutionality of the LC Statute and Defendant WBJLC's lawful operation under that statute. Such harm is irreparable, and the injury would continue as Defendant WBJLC made broadcasting reservations with TV stations worth $2.26 million shortly after the Plaintiffs' filing of their Complaint. The Defendants' argument that the Plaintiffs would not be harmed by Defendant WBJLC's expenditures due to Plaintiff Jackson's personal expenditures, (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 18), fails for reasons already explained by the Court in its irreparable harm analysis. *See also Perdue*, 584 F. Supp. 3d at 1328 (applying *Davis* and rejecting the defendants' argument that the plaintiffs' harm was mitigated by self-funding his own campaign); *One Ga.*, 601 F. Supp. 3d at 1309 (rejecting the defendants' argument that funds raised by the plaintiffs' campaign mitigated their harm and placed the defendants at a disadvantage because the leadership committee could still raise funds for the general election);

The Defendants argue that the harm to Defendant Jones's campaign upon entry of the TRO outweighs any harm to the Plaintiff. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 17-20). They liken the entry of the TRO to a gag order and prior restraint, which allows the Plaintiffs to allegedly dominate the airwaves while Defendant WBJLC's lawful

expenditures are quashed. (*See id.* at 17-18). This argument entirely mischaracterizes the nature of the injunction. As Judge Cohen explained in *Perdue* under similar circumstances, the requested injunction restores Defendant Jones's campaign to the status quo that would have existed prior to the operation of the LC Statute. *See Perdue*, 584 F. Supp. 3d at 1327. Furthermore, there is no prohibition on Defendant WBJLC from spending their contributions during the general election. *See One Ga.*, 601 F. Supp. 3d at 1309.

In effect, Defendant Jones's campaign can still receive contributions and spend money on advertising without any restriction imposed by the Court as long as Defendant WBJLC is not a participant in the campaign. This effectively requires both Plaintiff Jackson and Defendant Jones to conduct their campaign finances under the same restrictions imposed by O.C.G.A. § 21-5-41(a). There is no restriction on Defendant Jones spending his own money to fund his campaign, just as Plaintiff Jackson has been doing for his own. Thus, the balance of the harms favors the Plaintiffs.

### E. Public Interest

The fourth factor requires a court to consider whether granting the TRO will disserve the public interest. *See America's Health Ins. Plans*, 742 F.3d at 1329. "[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Scott*, 612 F.3d at 1297. "Similarly, a[n]

[ ] injunction is not contrary to the public interest because it is in the public interest to protect First Amendment rights." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024).

Still, the Defendants argue that the public interest weighs against granting the TRO because it requires Defendant WBJLC to cancel any advertising contracts it entered into after February 10, 2026 (the day the Complaint was filed). (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 21-22). The Defendants first take issue with a potential TRO seeking mandatory injunctive relief because such relief would alter, rather than maintain, the status quo. (*Id.* at 21). The Defendants then take issue with the proposed TRO reversing Defendant WBJLC's past actions as it interferes with funds already spent or committed. (*Id.* at 21-22).

The Court disagrees. The mandatory injunctive relief imposed by the TRO resets the parties to a position where both campaigns are subject to the same rules and regulations for the Republican gubernatorial primary. Defendant WBJLC's contracts with television stations were only entered into after the Plaintiffs filed their Complaint with the Court and were on notice that they sought to restrict the operation of Defendant WBJLC due to the unconstitutionality of the LC Statute. *See Porter v. Lee*, 328 U.S. 246, 251 (1946) ("It has long been established that where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may

by mandatory injunction restore the status quo" (citing *Texas & New Orleans R.R. Co. v. Northside Belt Ry. Co.*, 276 U.S. 475, 479 (1928))). Although this relief is being granted early in the litigation, it does not alter the status quo as the Defendants contend.

The Defendants' second argument similarly fails. The Defendants cite to *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005), for the proposition that the Court may not order the reversal of Defendant WBJLC's past actions. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 21-22). This argument reflects a fundamental misunderstanding in the decision's holding. It is true that an injunction is limited to prospective relief, *U.S. Army Corps of Eng'rs*, 424 F.3d at 1133 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965)), and that the Eleventh Circuit stated that a "preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law," *id.*

But the Eleventh Circuit's use of the word "sanction" is indicative of their actual holding. *See id.* The facts underlying the appellate court's decision show that the court was reviewing an injunction that was entered against certain parties by a lower court *after* all the harm had already occurred. *See id.* ("Alabama and Florida make clear that all of the harm they claim has *already* occurred"). The Eleventh Circuit was explicit about what the lower

27

court's true error was, holding that "*preventing irreparable harm in the future is 'the sine qua non of injunctive relief.'* " *Id.* (citation omitted) (emphasis added). This is further reflected within the holding, as the appellate court concludes that the plaintiffs' past injuries are "irremediable—which renders injunctive relief inappropriate." *Id.*

Here, it is true that the proposed TRO would require Defendant WBJLC to reverse past conduct, namely the cancellation of advertising contracts with television stations. But this action alone does not harm the Plaintiffs. It is the use of Defendant WBJLC's funds in favor of Defendant Jones's campaign and the exposure of the subsequent advertisement to the public that continues to harm the Plaintiffs. An injunction cannot remedy past harm, but it can still be imposed where "irreparable injury might result from delay or inaction." *U.S. Army Corps of Eng'rs*, 424 F.3d at 1133. Here, the Defendants have made no showing that Defendant WBJLC has spent any amount of money under any of the advertising contracts made. Furthermore, from the Court's knowledge, none of the advertisements have aired.

There is likely a reason for that. At the February 20, 2026 hearing, the Plaintiffs highlighted that, generally, the media contracts entered into by Defendant WBJLC require "no payment or financial commitment until 24 hours before the start of the reserved period." (Feb. 20, 2026 Hearing 24:24-25:7). This means that Defendant WBJLC may cancel its contracts with

28

television stations that it entered into after the filing of the Complaint without any payment or penalty. (*See id.*). The Defendants never provided any facts in opposition to this statement within their briefing or during the hearing. Thus, the requested relief under the TRO would not disserve the public interest because the mandatory relief it imposes on Defendant WBJLC does not alter the status quo and remedies imminent, not past harm.

### F. Deficiencies Under the Federal Rules of Civil Procedure

Finally, the Defendants oppose the Plaintiffs' proposed TRO based on two structural deficiencies under the Federal Rules of Civil Procedure. First, the Defendants argue that the Plaintiffs have failed to join necessary parties to obtain their requested mandatory injunctive relief under Federal Rule of Civil Procedure 19 because the injunction "impairs and impedes" on their interest. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 15-16). Second, the Defendants argue that the Plaintiffs' requested relief fails for the want of specificity required by Federal Rule of Civil Procedure 65. (*See id.* at 23-25). Neither is fatal to the Plaintiffs' request for a TRO here.

#### 1. Joinder of Necessary Parties

Under Rule 19, a party is indispensable from an action if "that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P.

19(a)(1)(B)(i). In determining whether a party is indispensable under Rule 19(a), "pragmatic concerns, especially the effect on the parties and the litigation, control." *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) (citation modified). The Defendants argue that the television stations that Defendant WBJLC contracted with are necessary parties under Rule 19 because the cancellation of those contracts would "impair or impede" their contractual interests. (*See* Defs.' Br. in Opp'n to Pls.' Mot. for Temp. Restraining Or., at 15-16). Taking all "pragmatic concerns" into account, the Court holds that the television stations are not indispensable parties because their interest in the litigation is *de minimis*.

While it is true that each television station has a contractual interest in each reservation made by Defendant WBJLC, several factors counsel against their inclusion as an indispensable party. First, the contractual interest alone is bare. No money has been exchanged, and the parties have agreed that Defendant WBJLC may cancel its reservation without penalty in most circumstances. Second, the Plaintiffs' requested TRO does not declare such contracts void, but rather requires Defendant WBJLC to cancel them, something Defendant WBJLC was already entitled to do. Third, there is no evidence that the television stations cannot enter into other reservation contracts to remedy any harm posed by the entry of the TRO. Denying a TRO on this basis for a *de minimis* interest is not pragmatic and does not take into

account the effect on the Plaintiffs or the litigation as a whole. Therefore, the Court concludes that the television stations are not indispensable parties under Rule 19.

### 2. Vagueness of Requested Relief

Under Rule 65, every order granting a restraining order must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). From the text of this Rule alone, the Defendants' Rule 65 argument fails. Rule 65(d) is a requirement imposed on a court entering a preliminary injunction or TRO. *See Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (1998). It does not impose any such requirement on a plaintiff seeking a TRO from the Court. *See id.* If such a requirement exists, the Defendants fail to cite supporting authority for it in their briefing to the Court. Thus, the Court is not inclined to break new ground and deny a TRO on this basis.

### IV. Conclusion

For the foregoing reasons as well as those stated on the record at the February 20, 2026 hearing on the motion, the Plaintiff's Motion for Temporary Restraining Order [Doc. 14] is GRANTED. Defendant WBJLC is hereby ENJOINED from raising or spending any money in support of Defendant Jones's Georgia gubernatorial campaign until Defendant Jones becomes the nominee of the Republican Party or further order of this Court, whichever

comes first. Furthermore, the Defendants are ORDERED to either (1) cancel any advertising contracts of any kind entered into by Defendant WBJLC that support Defendant Jones's campaign or (2) have those advertising contracts assumed by Defendant Jones's official candidate committee, Defendant Burt Jones for Georgia, Inc., within 14 days of the date of this Order.

A hearing on the Plaintiffs' Motion for Preliminary Injunction [Doc. 12] is hereby set for March 13, 2026, at 10:00 A.M. in Courtroom 2108, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. No live witnesses will be permitted. The Defendants are directed to file their response to the Plaintiffs' Motion for Preliminary Injunction [Doc. 12] by March 2, 2026, and any reply is due by March 11, 2026.

SO ORDERED, this ___27th___ day of February, 2026.


THOMAS W. THRASH, JR.
United States District Judge

32