## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD L. JACKSON; et al.,

     Plaintiffs,

v.

WILLIAM BURTON JONES, in his
personal capacity, and in his official
capacity as the Lieutenant Governor
of Georgia, et al.,

     Defendants.

CIVIL ACTION FILE

NO. 1:26-CV-782

## DEFENDANT LIEUTENANT GOVERNOR W. BURTON JONES' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

William Burton Jones, acting in his official capacity as the Lieutenant Governor of Georgia ("Lt. Governor Jones"), submits this Brief in Opposition to the motion for preliminary injunction (the "Motion") filed by plaintiffs Richard L. Jackson ("Mr. Jackson") and Jackson for Governor, Inc. (the "Jackson Campaign") (collectively, "Plaintiffs").[1]  With this response, Lt. Governor Jones shows that the Motion should be denied.[2]

---

[1] Lt. Governor Jones expressly adopts all arguments set forth in the briefs of his co-defendants.

[2] If this Court elects to enter a preliminary injunction, Lt. Governor Jones respectfully requests that this Court do so from the bench, enter a written order as soon as possible, and then stay its own injunction pending appeal. *See Pine Ridge Recycling, Inc. v. Butts County,* 874 F. Supp. 1383, 1386 (M.D. Ga. 1995) (the factors for a stay pending appeal are the same as those for entering

**INTRODUCTION**

In Georgia, the Office of Lieutenant Governor serves as President of the Georgia Senate. Ga. Const. Art. V, Sec. I, Par. III. Any executive functions must be "prescribed by the Governor" or general law. *Id.* Plaintiffs correctly do not allege that Governor Kemp has prescribed the Office of Lt. Governor any executive authority, and O.C.G.A. § 21-5-34.2 (the "Challenged Provision") does not either. Consequently, the Office of Lt. Governor is absolutely and fully immune from suits seeking prospective, injunctive relief. *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity" "of which [the] officer is an agent." (quotation omitted)). Even if that were not so, Lt. Governor Jones does not act in his official capacity or exercise the responsibilities of Lt. Governor with regards to WBJ Leadership Committee, Inc. ("WBJLC"), even if he chairs the

---

an injunction in the first place, just placing the burden on the enjoined defendant as movant) (citing *In re Federal Grand Jury Proceeding (Cohen)*, 975 F.2d 1488, 1492 (11th Cir.1992)). With the primary election fast approaching, time is of the essence in seeking review of any injunctive relief this Court enters, since Federal Rule of Appellate Procedure 8(a) says that "[a] party must ordinarily move first in the district court" for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." And because "the test for a stay is so similar to the test for a preliminary injunction," *Democratic Executive Committee of Florida v. Detzner*, 347 F. Supp. 3d 1017, 1032 (N.D. Fla. Nov. 15, 2018), the arguments in this brief suffice to articulate Lt. Governor Jones' arguments for a stay pending appeal.

committee by reason of his public office, and Plaintiffs do not allege otherwise. Nor do they allege any conduct of the Office of Lt. Governor, or Lt. Governor Jones himself, that violated a legal or constitutional right. These are both necessary elements of 42 U.S.C. § 1983 claims.

Finally, because Plaintiffs must demonstrate standing "'for each claim that they press against each defendant,'" the fact that Plaintiffs cannot trace any alleged injury to any act of Lt. Governor Jones in his official capacity, their request for a preliminary injunction fails. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

While Lt. Governor Jones leaves WBJLC to elaborate further, at minimum the Court should ensure that any relief preserves WBJLC's ability to engage in lawful political activity that Plaintiffs do not challenge. Plaintiffs' counsel expressly conceded at the TRO hearing that Mr. Jackson and the Jackson Campaign "don't challenge or object or make [any] constitutional argument" as to "the other things that leadership committees can do," including "issue advocacy," "party building" or "fund[ing] many different candidates in their campaigns." [TRO Hr'g Tr. at 69:9–15.] That concession is significant. It confirms that Plaintiffs' alleged injury, if any, is limited to a narrow category of conduct and does not extend to WBJLC's broader participation in the political process.

Accordingly, any injunctive relief must be strictly confined to the specific conduct allegedly causing harm. An order that categorically prohibits WBJLC from engaging in otherwise lawful political spending, particularly activity unrelated to the gubernatorial election, would exceed the scope of the asserted injury and improperly restrict core political speech and association. The Court should not impose a blunt prohibition on lawful political participation where Plaintiffs themselves have disclaimed any challenge to that activity. Nor should equitable relief extend beyond what is necessary to redress the precise injury alleged. *Consolidation Coal Co. v. Disabled Miners of Southern W.Va.*, 442 F.2d 1261, 1267 (4th Cir.1971).

## BACKGROUND

The 156th Georgia General Assembly enacted, and Governor Kemp signed into law, what became O.C.G.A. § 21-5-34.2 (the "Challenged Provision") on May 5, 2021; it became effective law on July 1, 2021. *See* Doc. 1 at ¶ 9. The people of Georgia elected Burt Jones as their Lt. Governor in 2022. *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, 1:21-CV-5337-SCJ, 2023 WL 5675032, at *4 (N.D. Ga. Aug. 23, 2023) (taking judicial notice of election results). On June 9, 2022, WBJLC timely registered with the Georgia State Ethics Commission (the "Ethics Commission"). [Doc. 1 at ¶ 14.] Jones serves as the chairman of WBJLC. [*Id.*]

Plaintiffs' Complaint describes no action of the Office of Lt. Governor with regard to the Challenged Provision, and what little it does is general and conclusory. Specifically, the Complaint opines that the Challenged Provision creates a "de facto second, super-duper campaign committee for Lieutenant Governor Jones." [Doc. 1 at ¶ 13.] But there are no facts showing Lt. Governor Jones has ever acted in his official capacity with regard to WBJLC, much less that he violated Plaintiffs' constitutional rights while doing so. It is of no consequence. It remains axiomatic that the Office of Lt. Governor is not running for Governor even though Mr. Jones is.

Similarly, paragraph 14 of the Complaint describes Lt. Governor Jones as the chairperson of WBJLC, but it attributes no acts to him or even alleges that in his position as chair of WBJLC, Mr. Jones exercises the responsibilities of the Lt. Governor or that the Office of Lt. Governor has done anything. [Doc. 1 at ¶ 14.] Paragraph 31 simply describes Lt. Governor Jones as a state official, and there is no dispute on that point, but status is not action. [*Id.* at ¶ 31.]

Paragraph 32 makes the conclusory allegation that Lt. Governor Jones "has de facto and de jure control of WBJ Leadership Committee and its operations." [*Id.* at ¶ 32.] The complaint offers no detail on why or how this assertion is fact. However, WBJLC is non-profit corporation subject to the requirements of the Georgia Non-Profit Corporation Code, including that its board consist of at least three directors and that all corporate powers shall be

exercised by its board. *See* O.C.G.A. §§ 14-3-801(b) ("all corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board"); 14-3-803(a) (number of directors for corporation formed after July 1, 2023 must be at least three).[3] This formal corporate structure underscores the absence of any nexus or joint action between the Office of the Lieutenant Governor and the alleged injury. WBJLC is a separate nonprofit corporation governed by its Board of Directors and officers pursuant to Georgia law. [Ex. 1.] Lt. Governor Jones does not have unilateral authority over WBJLC's operations, finances, contracts, or corporate decisions. Rather, authority is vested in the Board by law, which further requires at least three members.

From there, paragraph 33 makes a legal allegation, specifically that WBJLC is "entirely dependent upon and intertwined with Lieutenant Governor Jones" based on the language of the Challenged Provision. [Doc. 1 at ¶ 33.] From this legal perch, Plaintiffs then allege without explanation, reasoning, or merit that *all* defendants, including Lt. Governor Jones (e.g., the Office of Lt. Governor), "personally and through the conduct of their employees, officers, agents, and servants, acted under color of state law at all times

---

[3] A copy of the Certificate of Incorporation of WBJLC issued by Georgia Secretary of State Raffensperger and WBJLC's Articles of Incorporation are attached as "Exhibit 1."

relevant to this action." [*Id.* ¶ 35.] The Complaint relies on labels, such as "control," "intertwined," and "under color of state law", but it does not describe any concrete conduct by Lt. Governor Jones in his official capacity. [*Id.* ¶¶ 31-33,35.] It identifies no meeting he convened, no directive he issued, no funds he authorized in an official role, no communication sent from the Office of the Lt. Governor, and no decision made through the authority of that office. [*Id.*] Instead, the pleading repeats characterizations drawn from the statutory text and then assigns legal significance to them without supplying supporting facts. [*Id.*] The absence of specific, non-conclusory factual allegations leaves the asserted connection between the Office of the Lt. Governor and WBJLC entirely undeveloped in the Complaint.

Adding to these challenges, the complaint fails to distinguish between Mr. Jones and Lt. Governor Jones, despite the "significant" differences between the two capacities. *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007). Even when combined, Plaintiffs do not attempt to allege what either Mr. Jones or Lt. Governor Jones *have* done; rather, they speculate about what WBJLC *might* do. *See*, *e.g.*, [Doc. 1 at ¶¶ 43 (alleging that Lt. Governor Jones is "able to raise and expend substantially more funds than Jackson"), 45 (asserting that expenditures from WBJLC that promote the Jones Campaign harm "Jackson's candidacy"), 52 (quoting statutory text), 56 (projecting that Lt. Governor Jones "can materially out-raise and out-spend Jackson," and

chair a leadership committee), 61 (describing aspect of any leadership committee), 62 (asserting Jackson will not "be able to compete on an equal fundraising and campaign spending footing with" Lt. Governor Jones), 63 (claiming Lt. Governor Jones has "effectively unlimited campaign speech")].

Taken together, the only thing that Plaintiffs allege against the Office of Lt. Governor is that the sitting Lt. Governor may chair a leadership committee, and then—in a completely conclusory manner—that either Mr. Jones, Lt. Governor Jones, or both, have "de facto and de jure control" of that leadership committee. [Doc. 1 at ¶ 32.] The governing documents confirm what the motion omits: WBJLC operates pursuant to corporate governance rules, not through the unilateral authority of the Lieutenant Governor acting under color of state law. This leaves the Court with nothing but speculation, legal argument, and conclusory allegations as the factual basis to restrain a statewide elected constitutional officer of the State of Georgia.

Based on these limited and conclusory allegations, Plaintiffs seek a preliminary injunction that:

1. Enjoins "the enforcement O.C.G.A. § 21-5-34.2 as applied unequally to Jackson;"

2. Enjoins "political fundraising and spending" by WBJ; and

3. Enjoins the Jones Campaign from "receiving contributions" from WBJLC. [Doc. 12-1 at 6.][4]

Lt. Governor Jones was not a target of Plaintiffs' motion for temporary restraining order, and consequently, he does not understand the TRO to restrain the Office of Lt. Governor in any way.

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy" that cannot be granted unless the movant "clearly establishe[s]" each of the four prerequisites: (1) substantial likelihood of success on the merits; (2) irreparable injury; (3) the alleged injury to the movant outweighs that to the nonmovant; and (4) the injunction would be in the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306–07 (11th Cir. 1998).

This is not a motion to dismiss, and this Court should not accept Plaintiffs' allegations as true. *Compass Chem. Int'l, LLC v. True N. Products, LLC*, 1:09-CV-3491-RLV, 2010 WL 11549648, at *2 (N.D. Ga. Feb. 22, 2010) (distinguishing between standards for a motion to dismiss and one for a preliminary injunction). Indeed, Courts in this District have denied motions for preliminary injunction where the movant relies on speculation that "it will suffer irreparable harm or that it will suffer a loss of competitive edge. This is

---

[4] The pagination references refer to the ECF-created pages found at the top of the pleadings.

conclusory." *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1357 (N.D. Ga. 2017).

Other district courts in the Eleventh Circuit have properly denied motions for

immediate injunctive relief when the movant relies on conclusory statements

to explain "the manner in which defendants" acted, and how that conduct gives

rise to a claim for relief. *See*, *e.g.*, *Mitchell v. Sampson*, 5:23-CV-214-TES-AGH,

2024 WL 7004927, at *2 (M.D. Ga. Dec. 16, 2024); *Brown v. Florida Gulf Coast

Univ. Bd. of Trustees*, 218CV157FTM29MRM, 2019 WL 1856995, at *1 (M.D.

Fla. Apr. 25, 2019).

## ARGUMENT AND CITATION TO AUTHORITY

Injunctive relief is not available against Lt. Governor Jones for

numerous reasons. First, the Office of Lt. Governor is immune from suit based

on the Eleventh Amendment to the United States Constitution. Second, when

acting in his legislative role, Lt. Governor Jones is absolutely immune from

liability based on binding precedent in this Circuit. Third, Plaintiffs lack

standing because their alleged injuries are not traceable to any conduct of Lt.

Governor Jones. Fourth, Plaintiffs fail to identify any action by Lieutenant

Governor Jones taken under color of state law. Fifth, Plaintiffs fail to "clearly

establish" that they have a "substantial likelihood" of success on the merits of

their claims against Lt. Governor Jones. *Robertson*, 147 F.3d at 1306–07. And

Sixth, Plaintiffs seek an overly broad injunction in violation of precedent and

Federal Rule of Civil Procedure 65.

When evaluating Plaintiffs' contentions, particularly in the light of having to clearly establish a substantial likelihood of success on the merits, it is important to bear in mind that Plaintiffs have an "obligation to provide the grounds of his entitlement to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007) (emphasis added). Threadbare recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While this is not a motion to dismiss, Plaintiffs have failed to allege, much less prove, any enforcement authority, causal connection, or redressable injury traceable to the Lieutenant Governor in his official capacity.

I.      **Sovereign Immunity Precludes Relief Against Lt. Governor Jones.**

It is well-established law that a suit against a state official in his or her official capacity is the same as a lawsuit against the state itself. *Will,* 491 U.S. at 71 (1989). Under the Eleventh Amendment, "civil actions against state officials in their official capacity" generally fail. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The *Ex parte Young* exception applies when a claim is brought against a state official in his or her official capacity and the plaintiff seeks "prospective equitable

relief to end continuing violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir.1999).

Here, Plaintiffs do not expressly seek any injunctive relief against the Office of Lt. Governor. While this is a standing problem, it also shows that they are not seeking any prospective, injunctive relief against Lt. Governor Jones. Nor can they. Because the Office of Lt. Governor plays no role in the enforcement or implementation of the Challenged Provision, the Eleventh Amendment bars any relief against Lt. Governor Jones, and so the *Ex parte Young* exception is inapplicable. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

Instead, the complaint and preliminary injunction motion may seek to unwind the creation of WBJLC, which is not prospective relief. Indeed, it is difficult to understand what else the Office of Lt. Governor has to do with Plaintiffs' concerns. The Office of Lt. Governor plays no part in enforcing or implementing the Challenged Provision; it engages in no political fundraising or spending, and it does not send funds to or receive funds from WBJLC. *See* Doc. 12-1 at 6.

The Georgia Constitution's limits on the authority of the Office of Lt. Governor makes this conclusion both predictable and necessary. The Office of Lt. Governor presides over the State Senate and exercises only those other powers that are conferred upon him by the Governor or general law. Ga. Const.

Art. V, Sec. I, Par. III. Put differently, the Lt. Governor's authority is presumed to be legislative unless the Office of Lt. Governor has been delegated certain executive functions. The Complaint does not identify any specific, executive function exercised by the Lt. Governor at issue in this lawsuit, so the default remains that he acts in his legislative capacity.

Given this, the only possible thing Lt. Governor Jones did that relates to Plaintiffs' alleged harm is that the Challenged Provision allows him to form a leadership committee during his period of service as the Lt. Governor of Georgia and be identified in the leadership committee's registration with the Ethics Commission, filed on June 9, 2022. [Doc. 1 ¶ 5.] Prospective injunctive relief cannot undo that, and retroactive injunctive relief is unavailable against state officials sued in their official capacities. *See Pryor*, 180 F.3d at 1336. This applies even if the Court construed Plaintiffs' Complaint as seeking to restrain the Office of Lt. Governor for its legislative role. *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (noting that common law legislative immunity "was not abrogated by [42 U.S.C.] § 1983, and it applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief").

## II.    Lt. Governor Jones is Absolutely Immune.

With no power to enforce the Challenged Provision and his office without any role in implementing it, all that is left is the Lt. Governor's legislative role (which is the bulk of the Lt. Governor's authority). In that capacity, he is

absolutely immune under the binding precedent of *Taylor*, where the Eleventh Circuit held that state legislators "enjoy common law immunity from liability for their legislative acts … and it applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief." 405 F.3d at 1254.

As shown, Plaintiffs have not alleged that the Office of Lt. Governor (i.e., Lt. Governor Jones in his official capacity) has any role in enforcing or implementing the Challenged Provision. Plaintiffs have not alleged that the Lt. Governor does so. Nor have they alleged that the Governor has directed the Office of Lt. Governor to engage in fundraising or making expenditures for WBJ. Nor have Plaintiffs alleged that the Challenged Provision itself requires anything of Lt. Governor Jones, but it allows him to chair WBJLC. Indeed, the Georgia Nonprofit Corporations Code provides that the Chief Executive Officer is empowered the authority to conduct business for a nonprofit corporation. O.C.G.A. § 14-3-841. The only time the chairman of a nonprofit corporation board is mentioned is in the statute empowering him or her—along with the chief executive officer—to call meetings of the corporation. O.C.G.A. § 14-3-820(b). This ends the inquiry.

## III.  Plaintiffs Lack Standing.

Plaintiffs are not entitled to a preliminary injunction against Lt. Governor Jones because they lack standing to pursue their claims against the Office of Lt. Governor. Moreover, a temporary restraining order does not

automatically carry forward into the preliminary injunction stage and must independently satisfy Rule 65 and constitutional requirements. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 443 (1974) (finding Rule 65(b) does not place on party against whom temporary order has issued the burden of coming forward and presenting its case against preliminary injunction and burden is on party seeking preliminary injunction to show that it is entitled thereto). In any event, an injunctive order cannot bind a nonparty or an official against whom no proper basis for relief has been established. *Murthy*, 603 U.S. at 58.

Plaintiffs bear the burden of establishing all three Article III standing elements—injury, traceability, redressability—to show subject matter jurisdiction. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).  Standing is not dispensed in gross, but it must be demonstrated as to each claim against each defendant.  *Murthy*, 603 U.S. at 61.  Plaintiffs fall short of this burden.[5]

Traceability. As shown above, nothing in the complaint alleges any official act of Lt. Governor Jones that causes Plaintiffs' alleged harm.  Judge Calvert got it right when she recognized that a constitutional challenge against

---

[5] Lt. Governor Jones adopts the other Jones Defendants' arguments on injury in fact, just as Plaintiffs adopted their preliminary injunction brief when moving for the TRO.

a statute does not withstanding standing analysis when it alleges no act of the named defendant, as the "relevant inquiry [on traceability] is whether the plaintiffs' injury can be traced to the allegedly unlawful conduct of the defendant, not the provision of law that is challenged.'" *Carr v. Jones*, No. 1:25-cv-04426-VMC, Order (N.D.Ga. Aug. 28, 2025) (quoting *Collins v. Yellen*, 594 U.S. 220, 222 (2021)).[6] And, if the only thing Lt. Governor Jones did here is create WBJLC and serve as its chair, prospective injunctive relief cannot unwind that. *See Murthy* at 61. This Court cannot prospectively restrain him either, because Plaintiffs have not shown anything traceable to the Office of Lt. Governor in terms of raising or spending WBJLC funds.

Redressability. The Court's inquiry on this prong does not need to go any further than Plaintiffs' own pleadings. Neither the complaint nor the motion for preliminary injunction seek any relief against the Office of Lt. Governor. If Plaintiffs believed that restraining Lt. Governor Jones would be necessary to afford relief, they would have named him (in his official capacity) in the TRO Motion. That they did not tells the Court all it needs to know.

In addition, *Taylor* weighs strongly against a finding in favor of redressability. There, the Eleventh Circuit expressed "extreme[] doubt[]" that the plaintiff in *Taylor* "could satisfy the third prong of the standing

---

[6] A copy of Judge Calvert's Order is attached as "Exhibit 2."

requirements—a substantial likelihood that her injury could be redressed by a favorable decision against the[] legislator defendants." 405 F.3d at 1256 n.8. The same is true in this case where it is hard to conceive what the Lt. Governor's office should be restrained from.

The TRO Motion did not examine the role of Lt. Governor Jones, and nor did the *Perdue v. Kemp* order on which the TRO Motion heavily relied. *See* 584 F. Supp. 3d 1310, 1319-20 (N.D. Ga. 2022). In the *Perdue* litigation, the named state defendants were all squarely in the executive branch, as they were either the members of the Ethics Commission and the Attorney General, or Governor Kemp in his official and individual capacities. 584 F. Supp. 3d at 1323. Consequently, the amended complaint in *Perdue* identified the Office of Governor's role in enforcing and executing the laws of Georgia, including the Challenged Provision. *Perdue v. Kemp*, Doc. 47 at ¶ 15 (First Am. Compl.). Plaintiffs here have made no such allegation, and one would be precluded by the Georgia Constitution itself. And for the same reason, the *Perdue* order had no occasion to consider legislative immunity or legislative roles at all. This matters and is a dispositive distinction of this case.

## IV. Plaintiffs Have Not Shown Any Act of Lt. Governor Jones Under Color of State Law.

The Lt. Governor's lack of involvement in Plaintiffs' claims (which, at the very least are aimed at the wrong statute) creates another dispositive flaw:

there is nothing that the Office of Lt. Governor has done under color of state law for purposes of § 1983. In the Eleventh Circuit, a "defendant acts under color of state law when she deprives the plaintiff of a right through the exercise of authority that she has by virtue of her government office or position." *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265–66 (11th Cir. 2012) (citing *Almand v. DeKalb Cnty., Ga.,* 103 F.3d 1510, 1513 (11th Cir.1997)). The *Butler* opinion goes on to explain that, based on Supreme Court precedent, when an officer acts "'in the ambit of their personal pursuits are plainly excluded' from being under color of law, while the '[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.'" *Id.* (citing *Screws v. United States,* 325 U.S. 91, 111 (1945)).

Under this binding precedent, the Lt. Governor does not act under color of state law when WBJLC spends money or persons contribute money to WBJLC. Indeed, the Challenged Provision confers the ability to chair a leadership committee on the Lt. Governor, as well as other elected officials and caucuses. That matters, because Plaintiffs do not contend their harm arises out of the existence of WBJLC; rather, Plaintiffs' purported harms are that the Jackson Campaign will have to "work harder" to raise funds to campaign for Mr. Jackson. [Doc. 1 at ¶ 63.] That harm is traceable only to decisions by third parties (who are not parties to this lawsuit) exercising their First Amendment rights to contribute to WBJLC. If *donors* choose to give a contribution to WBJ

in excess of $8,400, that is not because the Lt. Governor acted under color of law and compelled them to do so.

And to be clear, Lt. Governor Jones (as opposed to Mr. Jones) does not solicit money for WBJLC; Mr. Jones and supporters of WBJLC do that. If it were the case that Lt. Governor Jones solicited funds using his office (e.g., stationary, phones), maybe the Plaintiffs could allege he acted under color of state law by raising money beyond the caps. But, Lt. Governor Jones does not do that, and Plaintiffs do not claim he does. In other words, nothing that Mr. Jones does in relation to WBJLC is "related to" the Office of Lieutenant Governor, and this is dispositive. *Miko v. Jones*, 1:20-CV-02147-SDG, 2022 WL 22865246, at *3 (N.D. Ga. Feb. 17, 2022) (addressing elected official's social media account).

## V.     Plaintiffs have not Clearly Established a Substantial Likelihood of Success on the Merits.

In addition to the reasons outlined above, Plaintiffs have not clearly established a substantial likelihood of success on the merits. Plaintiffs cannot obtain emergency injunctive relief against a constitutional officer based on harms they attribute to a statute's existence and the independent decisions of private donors—particularly where Plaintiffs identify no imminent official-capacity act to enjoin. On the First Amendment claim, they rely almost exclusively on the injunction order in *Perdue*. That case is not only

distinguishable, its analysis is no longer apt given the multiple opportunities Plaintiffs have to use leadership committees, independent committees, and that *each state* party in the *Perdue* order came from the executive branch of government. The Equal Protection claim is equally meritless, as it is based on a requested extension of persuasive authority involving a different set of rights for a different kind of plaintiff.

**VI.  Plaintiffs have not shown likely, imminent irreparable harm attributable to the Office of the Lieutenant Governor.**

Irreparable injury must be "likely in the absence of an injunction," not speculative or derivative. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And it must be traceable to the conduct of the defendant against whom relief is sought. *Murthy*, 603 U.S. at 61.

Here, Plaintiffs identify no imminent act of the Office of Lt. Governor that chills their speech, compels their conduct, or otherwise penalizes them. Even accepting Plaintiffs theory that the Challenged Provision causes them harm, there is nothing the Lt. Governor does that causes the injury, and certainly not on a prospective basis. Put differently, Plaintiffs do not allege that the Office of the Lt. Governor enforces or administers the Challenged Provision, or compels donors to contribute. Nor do they identify any exercise of executive authority by the Lt. Governor in connection with WBJ's operations.

## VII. The Balance of Equities and the Public Interest Weigh Against an Injunction.

The remaining factors fare no better. In weighing preliminary relief, courts must "balance the competing claims of injury" and give "particular regard for the public consequences" of injunctive relief. *Winter*, 555 U.S. at 20.

As shown above, Plaintiffs have not identified any conduct by the Office of the Lieutenant Governor to enjoin. Yet the relief they seek would effectively restrain lawful political fundraising and expenditures by a separate entity and restrict the expressive activity of donors and supporters. An injunction that broadly curtails such activity without tailoring it to any specific official act of this defendant would impose significant burdens while redressing nothing attributable to his office.

The public interest likewise counsels restraint. Enjoining a constitutional officer who neither enforces nor administers the challenged statute would inject uncertainty into Georgia's electoral process without addressing any concrete misconduct by that officer.

Put simply, this is the wrong defendant for the sweeping relief Plaintiffs request. The balance of harms and the public interest do not favor extraordinary relief against an official who plays no enforcement role and whose legislative authority is constitutionally circumscribed. Granting such

relief would burden protected political activity, disrupt the State's election framework, and provide no meaningful redress for Plaintiffs' asserted injury.

## VIII. Plaintiffs' Proposed Injunction is Overly Broad.

Every order granting an injunction must "state its terms specifically" and "describe in reasonable detail ... the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)(C). Here, Plaintiffs' proposed injunction flouts these well-established limitations, demanding relief that is neither specific nor narrowly confined to the alleged harm but instead would restrain lawful activity well beyond the scope of the operative Complaint.

### a. The Requested Relief Is Not Narrowly Tailored to the Alleged Injury

Under Federal Rule of Civil Procedure 65(d), an injunction must (1) state its terms specifically; (2) describe in reasonable detail the acts restrained; and (3) be no broader than necessary to remedy the plaintiff's injury. Fed. R. Civ. P. 65(d)(1)(B)(C). The Eleventh Circuit has repeatedly held that injunctive relief must be narrowly tailored to remedy the specific harm shown. *Consolidation Coal Co.* at 1261, 1267 (an injunction "should be tailored to restrain no more than what is reasonably required to accomplish its ends."). A court may not enter an injunction that reaches beyond the claims and conduct alleged in the operative complaint. "[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the

plaintiffs." *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Further, an injunction must "be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 143 (2d Cir. 2011) (internal quotation marks omitted).

> "[T]he specificity provisions of Rule 65(d) are no mere technical requirements." *Id.* (alteration in original) (quoting *Schmidt v. Lessard,* 414 U.S. 473, 476 (1974)). Rather, they promote "basic fairness," which "requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* (quoting *Schmidt,* 414 U.S. at 476). In addition, "district courts must take care to ensure that injunctive relief is not overbroad." Id. at 144. Specifically, a district court is "only empowered `to grant relief no broader than necessary to cure the effects of the harm caused by the violation.'"

*Id.* (quoting *Forschner Grp., Inc. v. Arrow Trading Co.,* 124 F.3d 402, 406 (2d Cir. 1997)).

Here, the Court is not asked to "fix" a specific injury, rather Plaintiff's seek to shut down an entire statutory scheme in ways untethered to the pleaded claims. Plaintiff does not include any reference whatsoever to Lt. Governor Jones in his official capacity in the request for relief. [Doc. 12-1 at 6.] Instead, Plaintiffs seek to shut down all fundraising and spending activity by a legally constituted leadership committee. Political fundraising and expenditures lie at the core of First Amendment protections. An injunction that categorically prohibits such activity must be exactingly narrow. This one is not.

The requested relief does not distinguish between primary contributions and spending for elections other than the gubernatorial election. Even if the Court were to conclude that some limitation is warranted, any relief must be carefully tailored to the alleged injury. Plaintiffs have expressly disclaimed any constitutional challenge to WBJLC's ability to engage in issue advocacy, party-building, or support for other candidates. The requested relief therefore cannot justify a sweeping prohibition on lawful political activity unrelated to the gubernatorial race. An injunction that extends beyond the specific conduct at issue would be overbroad and inconsistent with settled principles requiring narrowly drawn equitable relief.

Plaintiffs want the Court to choose the options that *most* restrict the speech of Defendants while targeting their requested relief only at WBJLC. Plaintiffs have not shown this Court that Lt. Governor Jones can redress these alleged injuries.

## IX. <u>Unclean Hand Bars Plaintiffs' Relief</u>

Lt. Governor Jones asks this Court to revisit its earlier analysis on unclean hands. It is telling that Plaintiffs still have offered no explanation for how they could spend unknown amounts of money creating flashy television advertisements with soundtracks and makeup artists, among other things, and now claim that advertisements cannot be made in less than 24 hours. [Doc. 47-1 at ¶13.] Nor have Plaintiffs suggested that spending that kind of money

before filing a declaration of intent or registration of committee with the Ethics Commission is permissible. They just hope the clock runs out on an investigation and that WBJLC is gagged and prevented from calling out the Jackson Campaign. This is what the doctrine of unclean hands can protect against: "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

More specifically, Plaintiffs' wrongdoing is "directly related to the claim" and it has caused the Jones Defendants injury. *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015). It is related, because the Office of Lt. Governor has an interest in seeing laws passed by the State Senate followed, even as it lacks the authority to enforce them. More broadly, had Mr. Jackson complied with the timelines established by Georgia law, WBJLC's supporters would have had additional time to support its mission and get its message out to Georgia voters (all while Mr. Jackson could seek help from another leadership committee). This is particularly true while the legislature is in session and the Jones Campaign is prohibited from soliciting campaign contributions. This shows how the Plaintiffs' unrebutted conduct warrants applying the doctrine of unclean hands.

Respectfully submitted this 2nd day of March, 2026.

*/s/ Vincent R. Russo*
Josh Belinfante

Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Macy McFall
Georgia Bar No. 411457
mmcfall@robbinsfirm.com
Jane Ashley Ravry
Georgia Bar No. 451038
jaravry@robbinsfirm.com
Robbins Alloy Belinfante Littlefield
LLC
500 14th Street, NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

## L.R. 7.1(D) CERTIFICATION

I certify that this Response has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Response has been prepared using 13-pt Century Schoolbook font.

*/s/ Vincent R. Russo*
Vincent R. Russo

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have served the foregoing **DEFENDANT LIEUTENANT GOVERNOR W. BURTON JONES RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** on all parties by electronically filing it using the CM/ECF filing system, which will automatically send an email notification of such filing to counsel for the parties.

This 2nd day of March, 2026.

*/s/ Vincent R. Russo*
Vincent R. Russo