IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| RICHARD L. JACKSON, et al.,<br><br>    Plaintiffs,<br><br>       v.<br><br>WILLIAM BURTON JONES, in his personal capacity, and in his official capacity as the Lieutenant Governor of Georgia, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:26-CV-782-TWT |

**OPINION AND PRELIMINARY INJUNCTION ORDER**

This is a civil rights action. It is before the Court on Plaintiffs Richard L. Jackson and Jackson for Governor, Inc.'s Emergency Motion for Preliminary Injunction [Doc. 12] and Defendant WBJ Leadership Committee, Inc.'s ("WBJLC's") Oral Motion to Stay the Preliminary Injunction made at the March 13, 2026 hearing on the Plaintiffs' Emergency Motion for Preliminary Injunction (the "PI Hearing"). For the reasons that follow as well as those stated on the record at the PI Hearing, the Plaintiffs' Emergency Motion for Preliminary Injunction [Doc. 12] is GRANTED in part and DENIED in part and Defendant WBJLC's Oral Motion to Stay the Preliminary Injunction is GRANTED.

## I.   Background

This case addresses yet another constitutional challenge to O.C.G.A. § 21-5-34.2 (the "LC Statute"). 2026 is an election year in Georgia for the position of Governor. Candidates for state-wide offices are generally subject to certain contribution limits imposed by Georgia law. Specifically, Georgia law provides that a candidate and their campaign committees may not "receive from any [person, corporation, political committee, or political party] contributions . . . which in the aggregate for an election cycle exceed" $8,400 for the primary election and $4,800 for the primary runoff election. O.C.G.A. § 21-5-41(a); (*See* Compl. ¶¶ 10, 10 n.1, 50 [Doc. 1]).

But in 2021, the Georgia Legislature passed a law allowing certain candidates to circumvent the limits imposed by O.C.G.A. § 21-5-41. *See* Ga. Laws 2021, Act. 219 eff. July 1, 2021. Now codified as the LC Statute, the law allows for the creation of "leadership committees" to operate within certain Georgia statewide elections, subject to regulations. *See* O.C.G.A. § 21-5-34.2. A "leadership committee" may only be created by and chaired by the Governor, the Lieutenant Governor, or the nominee of a political party for Governor or Lieutenant Governor. O.C.G.A. § 21-5-34.2(a); (*see* Compl. ¶ 9). These "leadership committees" may receive contributions and make contributions toward certain candidates' election campaigns without any dollar limitation

2

that would otherwise be imposed by O.C.G.A. § 21-5-41. O.C.G.A. § 21-5-34.2(d), (e); (*See* Compl. ¶¶ 11-12).[1]

In the 2026 Georgia gubernatorial election, Defendant William Burton Jones, the current Lieutenant Governor of Georgia, is seeking the Republican nomination for Governor.[2] (*See* Compl. ¶ 28). In 2022, Defendant Jones organized a leadership committee, Defendant WBJ Leadership Committee, Inc. ("WBJLC"). (*Id.* ¶ 14). Since the creation of Defendant WBJLC, the leadership committee has been permitted to raise unlimited contributions from donors. (*Id.*). As of June 30, 2025, Defendant WBJLC reported a $14,299,337.43 ending monetary balance. (*Id.* ¶ 14 n.3). Furthermore, Defendant WBJLC has received multiple contributions of $100,000. (*Id.*). Defendant Jones has been tapping into the funds collected by Defendant WBJLC to facilitate his campaign for Governor. (*See id.* ¶ 15). Plaintiff Richard L. Jackson is a new

---

[1] Of note, State Senator Colton Moore has drafted and submitted a bill, titled the "Anti-Corruption Act," that, in part, amends the LC Statute. *See generally* S.B. 378, 158th Gen. Assemb., Reg. Sess. (Ga. 2025). The proposed legislation repeals much of the LC Statute and almost wholly replaces the code with the following provision: "[l]eadership committees shall be prohibited, and any leadership committee in existence on July 1, 2026, shall be prohibited from making further expenditures, return all contributions to the persons who made such contributions, and upon disposing of all assets dissolve its legal existence." S.B. 378(b), 158th Gen. Assemb., Reg. Sess. (Ga. 2025). Since April 4, 2025, the bill has not been referred to any committee.

[2] Defendant Brian Kemp, the current Governor of Georgia, is ineligible for re-election. Ga. Const. Art. V, § 1.

entrant to the Republican primary in the last month. (*See id.* ¶¶ 15, 21). As a candidate for Governor, Plaintiff Jackson is subject to the contribution limits imposed by O.C.G.A. § 25-1-41 and is not entitled to create a "leadership committee" as a private citizen. (*See id.* ¶ 16).

To remedy this alleged inequality, the Plaintiffs filed this Complaint with the Court, seeking declaratory and injunctive relief under the First and Fourteenth Amendments against the Defendants. (*See id.* ¶¶ 57-72). Specifically, the Plaintiffs argue that the LC Statute is unconstitutional because it imposes an unequal playing field within the Republican primary, where Defendant Jones may circumvent contribution limits while Plaintiff Jackson is still subject to them. (*See id.*). A day later, the Plaintiffs filed an Emergency Motion for Preliminary Injunction. (*See generally* Pls.' Emergency Mot. for Prelim. Inj. [Doc. 12]). The motion requested the Court to issue a preliminary injunction (1) enjoining the enforcement of the LC Statute as applied unequally to Plaintiff Jackson, (2) enjoining political fundraising and spending by Defendant WBJLC and (3) enjoining Defendant Burt Jones for Georgia, Inc. from receiving contributions from Defendant WBJLC. (*Id.* at 1).

The Plaintiffs then filed their Motion for Temporary Restraining Order before the Court due to an alleged increase in spending by Defendant WBJLC after the filing of the Complaint. (*See generally* Pls.' Mot. for Temp.

Restraining Or. [Doc. 14]). The Court held a hearing on the temporary restraining order (the "TRO Hearing") and granted the Plaintiffs' motion from the bench. The written order, filed a week later, enjoined Defendant WBJLC from raising or spending any money in support of Defendant Jones's Georgia gubernatorial campaign and the Defendants were ordered to either (1) cancel any advertising contracts of any kind entered into by Defendant WBJLC that support Defendant Jones's campaign or (2) have those advertising contracts assumed by Defendant Jones's official candidate committee, Defendant Burt Jones for Georgia, Inc., within 14 days. (Op. & Temp. Restraining Or., at 31-32 [Doc. 48]).

Two weeks later, the Court conducted the PI Hearing. There, the Court granted in part and denied in part the Plaintiffs' motion from the bench. After doing so, Defendant WBJLC orally moved to stay the preliminary injunction pending an appeal to the Eleventh Circuit. After hearing arguments from both parties, the Court granted Defendant WBJLC's oral motion from the bench. This written order follows.

## II.    Legal Standards

### A. Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as

5

to the four requisites." *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018) (citation modified). The movant must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the movant outweighs any potential harm that might result to the opposing party; and (4) that granting the injunction will not disserve the public interest. *Id.*

### B. Oral Motion to Stay the Preliminary Injunction

"A stay of a preliminary injunction requires the exercise of [a court's] judicial discretion, and the party requesting the stay must demonstrate that the circumstances justify the exercise of that discretion." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). The standard to stay a preliminary injunction substantially overlaps with the factors governing preliminary injunctions. *Id.* "A court considering whether to issue a stay 'considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted)). Because the test is so similar to the four-part test for

6

establishing entitlement to preliminary injunctive relief, courts rarely stay a preliminary injunction pending appeal unless exceptional circumstances exist. *Fla. Decides Healthcare, Inc. v. Byrd*, 785 F. Supp. 3d 1086, 1106 (N.D. Fla. 2025). However, the standards are not the same. *See Nken*, 556 U.S. at 434 ("There is substantial overlap . . . not because the two are one and the same, but because similar concerns arise").

### III.    Discussion

### A. Motion for Preliminary Injunction

#### 1.  Standing

Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. *Florence Endocrine Clinic, PLLC v. Arriva Medical, LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. Art. III, § 2). This means that any plaintiff filing a complaint in federal court must establish that they have standing to sue within the complaint. *Id.* at 1365-66 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). A plaintiff must demonstrate three elements to establish Article III standing: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1366 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

"The strength of proof required differs at separate stages of the litigation; at the preliminary injunction stage, the plaintiff must make a clear showing that she is likely to establish each element of standing." *HM Florida-ORL, LLC v. Governor of Fla.*, 147 F.4th 1207, 1215 (11th Cir. 2025), *reh'g granted*, *HM Florida-ORL, LLC v. Sec'y of Fla. Dep't of Bus. and Pro. Regul.*, 160 F.4th 1282 (11th Cir. 2025) (citation modified). "Standing is not dispensed in gross." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation modified). "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." *Id.* (citation modified).

As an initial matter, the Court finds that the Plaintiffs have not met their burden in establishing standing for any injunctive relief against Defendants James D. Kreyenbuhl, Rick Thompson, Joseph Cusack, Stan Wise, and Dana Diment, in their official capacities as members of the Georgia State Ethics Commission, and Defendant Christopher M. Carr, in his official capacity as the Attorney General of the State of Georgia (collectively, the "State Defendants"). Nowhere in the Plaintiffs' Complaint is any relief requested against the State Defendants. In fact, the only time the Plaintiffs request any relief against the State Defendants is within their reply briefing to this Court. (*See* Reply Br. in Supp. of Pls.' Mot. for Prelim. Inj., at 5 [Doc. 63]). There, the

8

Plaintiffs explain that "[b]ut for the LC Statute, [Plaintiff] Jackson would file a complaint with [the] State Defendants asking them to enforce state contribution limits [under O.C.G.A. § 21-5-41]" and that "[a]n injunction barring the State Defendants from enforcing the LC Statute would allow [Plaintiff] Jackson to prosecute such a complaint." (*Id.*). It is a well-established rule that "arguments raised for the first time in a reply brief are not properly before a reviewing court." *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (citation modified). Because the Plaintiffs have provided no other evidence, the Court concludes that the Plaintiffs do not have Article III standing to seek injunctive relief from the State Defendants.

This conclusion does not defeat the Plaintiffs' motion entirely. The Plaintiff still seeks injunctive relief against Defendant Burt Jones for Georgia, Inc. ("Jones Committee") and Defendant WBJLC. Accordingly, the Court looks to whether the Plaintiff can establish Article III standing against the remaining Defendants.

### a.  Injury in Fact

"To establish an injury in fact, the plaintiff must demonstrate that he suffered 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1113 (11th Cir. 2021)

9

(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "An injury is particularized when it 'affects the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n. 1). "To be concrete, the injury must be 'real, and not abstract.'" *Id.* (quoting *Spokeo, Inc.*, 578 U.S. at 340).

Here, the injury in fact alleged in the Complaint arises out of a violation of the First Amendment as recognized in *Davis*. In *Davis*, the Supreme Court considered a constitutional challenge to Section 319(a) of the Bipartisan Campaign Reform Act of 2002, otherwise known as the "Millionaire's Amendment." *See Davis*, 554 U.S. at 729. The Millionaire's Amendment provided that, when a candidate used personal funds in excess of $350,000 in their campaign, an opposing candidate could receive individual contributions three times the normal limit and could accept coordinated party expenditures without any limit. *See id.* In considering whether the candidate had standing to challenge the Millionaire's Amendment, the Supreme Court found that he satisfied the injury in fact element of standing because the operation of the statute would allow "his opponent to receive contributions on more favorable terms" after he had declared his candidacy. *Id.* at 734.

Similarly, the Court is satisfied that the Plaintiffs have met their burden in showing that they have suffered injury in fact. On similar challenges to the LC statute, every court addressing a candidate-plaintiff's standing

10

concludes that he suffers a qualifying injury when he is confronted with an uneven electoral playing field between incumbents and non-incumbents. *See One Ga., Inc. v. Carr*, 601 F. Supp. 3d 1291, 1302 (N.D. Ga. 2022) (relying on *Davis* to hold an injury in fact exists when one candidate can establish a leadership committee under the LC Statute while the other candidate may not and is subject to the traditional contribution limits); *Perdue v. Kemp*, 584 F. Supp. 3d 1310, 1319 (N.D. Ga. 2022) (relying on *Davis* to hold the same as to primary elections); *Graham v. Carr*, 634 F. Supp. 3d 1343, 1351-52 (N.D. Ga. 2022), *vacating as moot sub nom.*, *Graham v. Att'y Gen., State of Ga.*, 110 F.4th 1239 (11th Cir. 2024) (relying on *Davis* to hold the same as to general elections); *Carr v. WBJ Leadership Comm.*, No. 25-cv-4426-VMC, at 10-14 (N.D. Ga. Aug. 28, 2025), ECF No. 22 (relying on *One Ga.* and *Perdue* to conclude the same).

The Defendants argue for a narrower reading of *Davis*, arguing that an injury in fact only exists if a candidate is penalized for exercising his own First Amendment rights like *Davis*. (*See* Def. Jones Committee's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 5-8 [Doc. 51]; Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 14-15 [Doc. 52]). But the Court finds no reason to depart from previous holdings in this District. The Court's interpretation of *Davis* on this issue comports with the reasons enumerated in *Perdue* and *One Ga.*.

11

Therefore, the Court finds that the Plaintiffs have alleged sufficient injury in fact.

### b. Traceability

"To satisfy the traceability requirement, a plaintiff must establish a 'causal connection between the injury and the conduct complained of.'" *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 926 (11th Cir. 2023) (quoting *Lujan*, 540 U.S. at 560). "Proximate causation is not a requirement of Article III standing." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n. 6 (2014) (citation modified)). "A plaintiff therefore need not show (or, as here, allege) that 'the defendant's actions are the very last step in the chain of causation.'" *Id.* at 1126 (quoting *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997)).

The Court holds that the traceability requirement has been satisfied under the reasoning found in *Perdue*. In *Perdue*, the plaintiff, a candidate for the Georgia Republican gubernatorial primary election, brought a constitutional challenge against the LC Statute and sought a preliminary injunction against a leadership committee established by Governor Kemp, prohibiting the committee from making future expenditures. *See Perdue*, 584 F. Supp. 3d at 1315-17. When considering the traceability requirement of

12

Article III standing, Judge Cohen held that the plaintiff satisfied this element because the LC Statute permitted Governor Kemp to take advantage of an "inequitable scheme" and raise funds "not subject to the individual contribution limits established by O.C.G.A. § 21-5-41(a), while [the plaintiff] remains subject to those limits in the same primary election." *Id.* at 1320. Like *Perdue*, the facts in this case show a primary challenger in a gubernatorial race hamstrung by the "inequitable scheme" created by the LC Statute, where Defendant Jones can raise money for his campaign without restriction through Defendant WBJLC while Plaintiff Jackson is subject to the contribution limits imposed by O.C.G.A. § 21-5-41(a).

The Defendants disagree with this decision on two grounds. First, the Defendants urge the Court to look to Judge Calvert's decision in *Carr* to support their position that the Plaintiffs' injuries cannot be traceable to the Defendants because WBJLC is the only party to the motion. (Def. Jones Committee's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 9). This approach misconstrues Judge Calvert's decision in *Carr*. There, the Attorney General of Georgia, in his personal capacity, brought suit as a candidate in the Republican primary for governor against only Defendants Jones, WBJLC, and Burt Jones for Georgia, Inc. challenging the LC Statute. *Carr*, No. 25-cv-4426-VMC, at 7. Judge Calvert held that the traceability requirement was not satisfied because

13

the complaint failed to include any government officials or any claim that the LC Statute should be invalidated. *See id.* at 15-16. Indeed, part of the reason the plaintiffs failed to satisfy the traceability requirement was because the defendants were doing exactly what Georgia law allowed them to do. *Id.* at 14.

This is not the case here. The Plaintiffs have sued the three Defendants in *Carr* along with the State Defendants, who are in charge of enforcing the LC Statute. Those State Defendants are still part of this action, even if the Plaintiffs are not seeking injunctive relief against them.

Second, the Defendants argue that, under *Collins v. Yellen*, 594 U.S. 220 (2021), the Plaintiffs' injuries cannot be traceable to the Defendants because they did not engage in any unlawful conduct. (Def. Jones Committee's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 9 (quoting *id.* at 222); Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 16 (quoting *id.* at 243)). But the Defendants again take case law out of context. The Supreme Court did hold that the "relevant inquiry [for traceability] is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged" for constitutional claims. *Collins*, 594 U.S. at 243. But the provision of law challenged as unconstitutional was in relation to the structure of a federal institution and its lawful operation. *See id.* at 235 ("Second, they asserted that because the [Federal Housing Finance Agency] is

14

led by a single Director who may be removed by the President only 'for cause,' its structure is unconstitutional."). Applying this same logic here, Defendant WBJLC operated lawfully under the LC Statute, but the Plaintiffs may satisfy traceability because it is Defendant WBJLC's actions, in the Plaintiffs' as-applied constitutional challenge, that created the injury to the Plaintiffs. Accordingly, traceability is satisfied.

### c. Redressability

"Finally, [the Court] address[es] redressability, the third and final requirement of Article III standing. To satisfy this requirement, a plaintiff needs to show that 'it must be likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Garcia-Bengochea*, 57 F.4th at 927 (quoting *Lujan*, 540 U.S. at 561 (citation modified)).

The Court again is persuaded by Judge Cohen's decisions in *Perdue* and *One Ga.* on the issue of redressability. In both cases, Judge Cohen held that enjoining the leadership committees from spending more money in favor of Governor Kemp's campaign would redress the plaintiffs' injury and place the parties on a level playing field where both candidates are subject to the statutory maximum for contributions. *See Perdue*, 584 F. Supp. 3d at 1320; *One Ga.*, 601 F. Supp. 3d at 1303-04. Entering a preliminary injunction against Defendant WBJLC enjoining further expenditures in favor of Defendant

15

Jones's gubernatorial campaign will have the same effect.

It is irrelevant to the issue before the Court whether other leadership committees are capable of harming the Plaintiffs as the Defendants contend. (*See* Def. Jones Committee's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 11). The continued spending of Defendant WBJLC in favor of Defendant Jones's campaign in excess of the proscribed limits imposed by O.C.G.A. § 21-5-41(a) is the harm remedied by the entry of an injunction. Ultimately, if the Plaintiffs succeed in obtaining their declaratory and injunctive relief, the harm posed by the LC Statute will cease. Thus, the Plaintiffs' Complaint demonstrates that they have satisfied all three elements necessary for Article III standing to seek injunctive relief against Defendant WBJLC.

### 2. Likelihood of Success on the Merits

To establish a substantial likelihood of succeeding on the merits, a plaintiff must "demonstrate a likelihood of success at trial as to both its *prima facie* case and the affirmative defenses asserted by the defendant." *eCapital Com. Fin. Corp. v. Hitachi Cap. America Corp.*, 519 F. Supp. 3d 1129, 1134 (S.D. Fla. 2021) (citation modified).

### a. Defendant WBJLC as a State Actor

Section 1983 imposes liability on "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be

16

subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed *under color of state law.*" *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003) (emphasis added) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citation modified)). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* at 1277 (quoting *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50 (quotation marks omitted)).

Under guidance from the Supreme Court, the Eleventh Circuit has set forth three primary tests to determine whether a private party is involved in state action for the purposes of Section 1983: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Id.* (citation omitted). "The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise." *Id.* (citation modified). "[A court] must determine on a case-by-case basis whether sufficient state action is

17

present from a non-state actor (defendant) to sustain a section 1983 claim." *Id.* (citation omitted). "To charge a private party with state action under this standard, the governmental body and private party must be intertwined in a symbiotic relationship. The Supreme Court has indicated that the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Id.* at 1278 (citation modified). "Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation modified).

Judge Cohen's holding in *One Ga.* is instructive in determining whether state action exists under the nexus/joint action test. There, Judge Cohen was confronted with the issue of whether Governor Kemp's leadership committee was a state actor for the purposes of the plaintiffs' Section 1983 claim. After reviewing the LC Statute, the court concluded that the operation of the leadership committee satisfied the nexus/joint action test. *See One Ga.*, 601 F. Supp. 3d at 1308-09. Specifically, Judge Cohen noted that the LC Statute required a leadership committee to be chaired by the Governor in the case of Governor Kemp, and, if he left his position, Governor Kemp would be required to effectively dissolve the leadership committee. *See id.* at 1308 (citing O.C.G.A. §§ 21-5-34.2(a), (c)). Because Governor Kemp's leadership committee required him to chair the committee, Judge Cohen concluded that Governor

18

Kemp had "so far insinuated himself into a position of interdependence with the [leadership committee] that he [was] a joint participant in the enterprise." *Id.* (quoting *Rayburn*, 241 F.3d at 1348 (citation modified)).

Similarly, Defendant WBJLC contains all the hallmarks of satisfying the nexus/joint action test. At this stage in the Republican primary election, the only candidate in the election permitted to form a leadership committee is Defendant Jones, as Lieutenant Governor of the State of Georgia. Without Defendant Jones chairing Defendant WBJLC, the leadership committee would be required to dissolve and transfer its assets to another leadership committee. *See* O.C.G.A. § 21-5-34.2(c). Alternatively, the LC Statute requires Defendant Jones to name another eligible person as the new chairperson for Defendant WBJLC. *See id.* But the only other individual who could chair Defendant WBJLC at this stage of the election is Governor Kemp, because there will not be official nominees for any party until the conclusion of the primary elections on May 9, 2026. Thus, the Court concludes that Defendant WBJLC is a state actor for the purposes of the Plaintiffs' claims under Section 1983.

### b.  Substantive Arguments

Under the Complaint, the Plaintiffs allege two Section 1983 counts against the Defendants. (*See* Compl. ¶¶ 57-72). The first count requests declaratory and injunctive relief under the First Amendment, as applied to the

19

states by the Fourteenth Amendment. (*See id.* ¶¶ 57-65). The second count asserts an equal protection claim under the Fourteenth Amendment. (*See id.* ¶¶ 66-72). The Court need not address the second count because the Court concludes that the Plaintiffs have a substantial likelihood of success on the merits of their First Amendment claim.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment applies to Georgia through the Due Process Clause of the Fourteenth Amendment. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004) (citing *Near v. Minn.*, 283 U.S. 697, 707 (1931)). "The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Perdue*, 584 F. Supp. 3d at 1322 (quoting *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 480 U.S. 214, 223 (1989) (citation modified)). "Spending for political ends and contributing to political candidates both fall within the First Amendment's protection of speech and political association." *Id.* (quoting *Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 440 (2001)). But the Supreme Court routinely sustains "the facial constitutionality of limits on discrete and aggregate individual contributions and on coordinated party expenditures." *See Davis*, 554 U.S. at 737.

20

When confronted with such a statute that implicates First Amendment interests, the Supreme Court has held that the statute cannot stand unless it is "closely drawn" to serve a "sufficiently important interest," such as preventing corruption or the appearance of corruption. *Id.* This standard is considered to be less exacting than strict scrutiny, allowing "a measure of deference to the judgment of the legislative body that enacted the law." *Id.*; *Ala. Democratic Conf. v. Att'y Gen. of Ala.*, 838 F.3d 1057, 1063 (11th Cir. 2016). The burden of this showing is on the State, not the Plaintiff. *See Ala Democratic Conf.*, 838 F.3d at 1063.

Here, Defendant WBJLC fails to make any such showing within their response brief, instead repeating its standing arguments. (*See* Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 19-20).[3] But even if Defendant

---

[3] The Defendants, including Defendant WBJLC, repeatedly raise the argument that the Plaintiffs should not challenge the LC Statute, but should have instead challenged the contribution limits under O.C.G.A. § 21-5-41 because the challenge should be to the law restricting speech. (*See, e.g.,* Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 4). Such a challenge has already been rejected as improper by a court in this District. Indeed, Judge Ross rejected another primary candidate's challenge to O.C.G.A. § 21-5-41 because of the "unconstitutional scheme" created by the LC Statute, finding that an injunction would impermissibly privilege the Raffensberger and Jones' campaigns while other campaigns would still be subject to the law. *See Safe Affordable Georgia, Inc. v. Kreyenbuhl*, 1:25-cv-6985-ELR, at 14-16 (N.D. Ga. Jan. 27, 2026), ECF No. 20, *appeal docketed*, No. 26-10312 (11th Cir. Jan. 29, 2026).

21

WBJLC had attempted to carry their burden, the Court is bound by *Davis*. There, the Supreme Court explicitly stated that the court "ha[s] never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." *Davis*, 554 U.S. at 738. The Supreme Court further remarked that "imposing different contribution and coordinated party expenditure limits on candidates vying for the same seat is antithetical to the First Amendment." *Id.* at 743-44. The three prior cases within this District addressing the constitutionality of the LC Statute all apply *Davis* to ultimately conclude that the statute likely runs afoul of the First Amendment. *See Perdue*, 584 F. Supp. 3d at 1321-27; *One Ga.*, 601 F. Supp. 3d at 1304-07; *Graham*, 634 F. Supp. 3d at 1354-56.

The Court sees no reason to depart from Judge Cohen's prior holdings. The LC Statute creates the exact scheme the Supreme Court has explicitly disavowed by imposing different contribution limits for candidates vying for the Republican nomination for Governor of Georgia. Defendant Jones may take advantage of leadership committees, while Plaintiff Jackson is subject to the stricter campaign contribution limits imposed by O.C.G.A. § 21-5-41(a). Furthermore, Defendant WBJLC can point to no underlying purpose behind the LC Statute arising out of a need to combat corruption because the statute has no such purpose. Therefore, the Court concludes that the LC Statute is

22

likely unconstitutional as applied to the Plaintiffs.

### 3. Irreparable Harm

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'
" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation modified).
"[E]ven if [the] Plaintiffs establish a likelihood of success of the merits, the
absence of a substantial likelihood of irreparable injury would, standing alone,
make [ ] injunctive relief improper." *Id.* "An injury is irreparable 'if it cannot
be undone through monetary remedies.' " *Scott v. Roberts*, 612 F.3d 1279, 1295
(11th Cir. 2010). "[T]he asserted irreparable injury 'must be neither remote nor
speculative, but actual and imminent.' " *Siegel*, 234 F.3d at 1176-77 (citation
omitted).

Not every violation of constitutional rights constitutes irreparable harm.
*Id.* at 1177. Nonetheless, violations of the First Amendment often satisfy this
standard. In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court explicitly
held that "[t]he loss of First Amendment freedoms, for even minimal periods of
time, unquestionably constitutes irreparable injury." *Id.* at 373. Applying this
standard, the Eleventh Circuit has held that violations of the First
Amendment constitute irreparable harm to the Plaintiffs where there is an
"imminent likelihood that pure speech will be chilled or prevented altogether."
*Siegel*, 234 F.3d at 1178. This is because "chilled free speech . . . , because of

23

its intangible nature, could not be compensated for by monetary damages; in other words, plaintiffs could not be made whole." *Scott*, 612 F.3d at 1295 (citation modified).

Because the Court has found that the Plaintiffs are substantially likely to succeed on their First Amendment claim, the Plaintiffs have demonstrated irreparable harm. The continued expenditures of Defendant WBJLC in favor of Defendant Jones's campaign are only permitted under the LC Statute and would be barred by the campaign finance rules of O.C.G.A. § 21-5-41(a). The operations of Defendant WBJLC, permitted by the LC Statute, have violated and continue to violate the Plaintiffs' First Amendment right of free speech. Therefore, there is a very real and imminent likelihood that the Plaintiffs' speech will be chilled under the LC Statute. *See Siegel*, 234 F.3d at 1178.

Yet, Defendant WBJLC argues that any such harm is purely speculative because the Plaintiffs are only concerned that Defendant WBJLC may outraise them. (*See* Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj., at 20-21). This argument misses the mark and mischaracterizes the alleged harm. While it is true that part of the harm to the Plaintiffs is speculative, there is a very real and continued harm imposed by operation of the LC Statute. While the Plaintiffs are subject to certain contribution limits, Defendant Jones is not through Defendant WBJLC.

24

One of the only ways for Plaintiff Jackson to circumvent the unequal operation of the LC Statute is by self-financing his campaign, which he has done. And here, the Court finds no reason to penalize Plaintiff Jackson for the exercise of his First Amendment right to contribute to his own campaign. Indeed, previous decisions by the Supreme Court have emphasized "the fundamental nature of the right to spend personal funds for campaign speech." *See Davis*, 554 U.S. at 738-39 (discussing *Buckley v. Valeo*, 424 U.S. 1, 52-54 (1976) and finding that the decision emphasized the fundamental right to spend personal funds on a campaign). Furthermore, if the LC Statute is later declared unconstitutional as to its application to Defendant Jones's campaign, it may reduce the necessity for Plaintiff Jackson to spend on his own campaign because Defendant Jones would be subject to the same requirements as to his campaign. Therefore, the Court finds that the Plaintiffs have satisfied the irreparable harm factor.

### 4. Balance of Harms

The third factor requires a court to "weigh whether the defendant is harmed more by the issuance of injunctive relief than the plaintiff is harmed by not entering an injunction." *DJR Assocs., LLC v. Hammonds*, 241 F. Supp. 3d 1208, 1231 (N.D. Ala. 2017); *see also Swain*, 958 F.3d at 1090-91 (discussing the lower court's application of the factor and finding error in the balancing

25

test where the lower court balanced harm to the plaintiff generally, instead of harm to the plaintiff without an injunction).

Defendant WBJLC argues that the harm to Defendant Jones's campaign upon entry of the preliminary injunction outweighs any harm to the Plaintiffs. (*See* Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj, at 21-22). First, Defendant WBJLC notes that the Plaintiffs have "raised and reserved substantially more advertising time than [Defendant] WBJLC during this election cycle." (*Id.* at 21). Indeed, at the TRO Hearing, the Defendants emphasized this point, showing that the Plaintiffs were responsible for around 76% of total ad buy expenditures, while Defendant WBJLC was only responsible for 24%.

But once again, Defendant WBJLC's argument mischaracterizes the harm. The Plaintiffs are harmed by the unconstitutionality of the LC Statute and Defendant WBJLC's lawful operation under that statute. Such harm is irreparable, and the injury would continue as Defendant WBJLC continues to make expenditures in support of Defendant Jones' campaign for governor. Thus, there is an actual, imminent, and continuing harm to the Plaintiffs without the entry of an injunction against Defendant WBJLC.

Defendant WBJLC also argues that the entry of an injunction would unduly burden the Jones campaign because enjoining the leadership

26

committee from fundraising or expending funds would restrict a political committee in the midst of a contested primary with less than two months remaining until voting occurs. (*See* Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj, at 21-22). Furthermore, they liken the entry of the preliminary injunction to a gag order and prior restraint. (*See id.* at 23-25). But this argument rewrites the operation and the purpose of the injunction. As Judge Cohen explained in *Perdue*, the requested injunction restores Defendant Jones's campaign to the status quo that would have existed prior to the operation of the LC Statute. *See Perdue*, 584 F. Supp. 3d at 1327. Furthermore, there is no prohibition on Defendant WBJLC from spending its contributions during the general election. *See One Ga.*, 601 F. Supp. 3d at 1309.

In effect, Defendant Jones's campaign can still receive contributions and spend money on advertising without any restriction imposed by the Court as long as Defendant WBJLC is not a participant in the campaign. This effectively requires both Plaintiff Jackson and Defendant Jones to conduct their campaign finances under the same restrictions imposed by O.C.G.A. § 21-5-41(a). There is no restriction on Defendant Jones spending his own money to fund his campaign, just as Plaintiff Jackson has been doing for his own.

It is true that preliminary injunctions of legislative enactments must only be granted "reluctantly and only upon a clear showing that the injunction

27

before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (citation modified); (*see also* Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj, at 22). But the Plaintiffs have done so here. The balance of the harms favors the Plaintiffs.

### 5. Public Interest

The fourth factor requires a court to consider whether granting the preliminary injunction will disserve the public interest. *See America's Health Ins. Plans*, 742 F.3d at 1329. "[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Scott*, 612 F.3d at 1297. "Similarly, a preliminary injunction is not contrary to the public interest because it is in the public interest to protect First Amendment rights." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024).

Defendant WBJLC still contends that the public interest disfavors an injunction because this Court will be required to resolve "deeply technical questions about campaign finance" and that federal courts "ought not 'inject [themselves] into the most heated partisan issues.'" (Def. WBJLC's Br. in Opp'n to Pls.' Mot. for Prelim. Inj, at 22 (quoting *Rucho v. Common Cause*, 588 U.S. 684, 704 (2019)). But a campaign finance law that is unconstitutional in its application on First Amendment grounds is exactly the scenario where this

28

Court should act. This is not a partisan question; it is a legal question where federal courts must act to protect liberties enshrined by the Constitution. Therefore, the requested relief under the preliminary injunction would not disserve the public interest. Because the Plaintiffs have made an adequate showing on all four factors, the Court finds preliminary injunctive relief proper against Defendant WBJLC.

### B. Oral Motion to Stay the Preliminary Injunction

After the Court's ruling from the bench during the PI Hearing, the Court allowed Defendant WBJLC to make an oral motion to stay the preliminary injunction. (*See* PI Hearing at 90:25-91:7 [Doc. 65]; *see also* Def. WBJLC's Br. in Opp'n to Pls.' Br. for Prelim. Inj., at 5 n. 2 (improperly requesting in a footnote that, if the Court enters a preliminary injunction, it stay the preliminary injunction pending appeal)). Defendant WBJLC accepted the opportunity to do so, and the parties made arguments for and against the stay. (*See* PI Hearing at 91:23-97:24). Ultimately, the Court found that there were exceptional circumstances warranting a stay of its own preliminary injunction pending appeal. (*See id.* at 97:25-99:8). The reasoning follows.

#### 1. Likelihood of Success on the Merits

The first factor asks whether the stay applicant has demonstrated a strong likelihood of success on the merits of their appeal. *See Democratic Exec.*

29

*Comm. of Fla.*, 915 F.3d at 1318. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Nken*, 556 U.S. at 434 (citation omitted).

For the reasons explained within the Plaintiffs' Motion for Preliminary Injunction, the Court believes that *Davis* controls the issue and that the Plaintiffs, not Defendant WBJLC, have a substantial likelihood of success on the merits of their First Amendment claim against the Defendants. But the Court still will proceed to the second factor because the traditional four-factor standard for granting a stay is not wholly rigid. *See League of Women Voters of Fla., Inc. v. Fla Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022). One such scenario where courts relax the necessity of the first factor is when the balance of equities "weighs heavily in favor of granting the stay." *Id.* (citation modified). In such cases, a stay may be granted "upon a lesser showing of a substantial case on the merits." *Id.* (citation modified).

This is the Northern District of Georgia's seventh attempt to resolve the Constitutionality of Georgia's LC Statute as applied to both primaries and the general election. *See generally Perdue*, 584 F. Supp. 3d 1310; *One Ga.*, 601 F. Supp. 3d 1291; *Graham*, 634 F. Supp. 3d 1343, *Democratic Party of Ga., Inc. v. Kemp*, No. 24-cv-3154-MHC (N.D. Ga. Sep. 19, 2024), ECF No. 23; *Carr*, No. 25-cv-4426-VMC; *Safe Affordable Ga.*, No. 25-cv-6985-ELR; *Jackson v. Jones*,

No. 26-cv-782-TWT (N.D. Ga. Feb. 27, 2026), ECF No. 48. Each of these cases have tackled challenges related to the LC Statute on their understanding of judicial precedent laid out by the Eleventh Circuit and the Supreme Court. Further, the majority of these decisions have been appealed to the Eleventh Circuit without a decision on the merits. *See generally One Ga., Inc. v. Georgians First Leadership Comm.*, 2022 WL 16631279 (11th Cir. Aug. 2, 2022); *Perdue v. Kemp*, 2022 WL 18959697 (11th Cir. Dec. 15, 2022); *Graham*, 110 F.4th 1239; *Safe Affordable Ga., Inc. v. Kreyenbuhl*, No. 25-cv-6985-ELR (N.D. Ga. Jan. 29, 2026), ECF No. 23 (pending with the Eleventh Circuit).

The problem with this procedural posture is that "leadership committees . . . have no analogue." *Jackson v. Jones*, No. 26-cv-782-TWT, at 15. As Defendant WBJLC implicitly acknowledges, the Georgia legislature is nowhere near remedying any potential defect with the LC Statute. (*See* PI Hearing at 92:1-92:6). Although the Court is steadfast in its decision on the likelihood of success on the merits, the Court acknowledges that the Eleventh Circuit's guidance in interpreting the Supreme Court's decisions is necessary to prevent a patchwork of decisions from impacting Georgia's election finance law. Therefore, the Court holds that the chance of success for Defendant WBJLC on the merits is "more than negligible," and the showing is enough to survive the first factor. *See Nken*, 556 U.S. at 434 (citation omitted).

31

### 2. Irreparable Harm

The second factor requires a court to consider whether a stay applicant will suffer irreparable injury absent a stay. *See Democratic Exec. Comm. of Fla.*, 915 F.3d at 1326. On this factor, the Court acknowledges that its imposition of a preliminary injunction on Defendant WBJLC carries First Amendment implications that cannot be ignored. By enjoining Defendant WBJLC from accepting contributions or spending money on the candidate of their choosing, the preliminary injunction, in effect, limits otherwise lawful spending pursuant to the LC Statute.

Three Supreme Court decisions shape this finding. First, under *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), there is little difference between the First Amendment rights of an individual and a corporation. *Id.* at 365. Accordingly, laws (or judicial action) that suppress political speech on the basis of the speaker's corporate identity are unconstitutional. *Id.* Second, under *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014), levelling the playing field is not an acceptable governmental objective "[n]o matter how desirable it may seem." *Id.* at 207. While that case involved a federal law that imposed contribution limits on individuals contributing to federal candidates for office, *id.* at 193-96, the preliminary injunction entered by the Court does restrict Defendant WBJLC from making expenditures to level the playing field

32

between the Jackson and Jones campaigns. Third, under *Elrod*, the Supreme Court held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. at 373; *see Siegel*, 234 F.3d at 1178 (holding that violations of the First Amendment constitutes irreparable harm to the Plaintiffs where there is an ""imminent likelihood that pure speech will be chilled or prevented altogether").

Here, Defendant WBJLC is a duly incorporated nonprofit corporation under the laws of Georgia. (*See* Def. Jones' Br. in Opp'n to Pls.' Mot. for Prelim. Inj., Ex. 1, at 2-4 [Doc. 50-1]). If the Court's preliminary injunction were to take effect, the effect would result in a chilling of Defendant WBJLC's speech guaranteed under the First Amendment because it would be unable to raise or spend any money. Such harm is irreparable and even if this were a close call, free speech should reign out. (*See* PI Hearing at 94:17-94:20).. Thus, Defendant WBJLC has met its burden in demonstrating irreparable harm.

### 3. Balance of Harms

The third factor asks whether the issuance of the stay will "substantially injure the other parties interested in the proceeding" and asks a reviewing court to balance the harms. *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1317; *see Swain*, 958 F.3d at 1090-91 (discussing the lower court's application of the

33

factor and finding error in the balancing test where the lower court balanced harm to the plaintiff generally, instead of harm to the plaintiff without an injunction). Here, the continued operation of the preliminary injunction would have a massive asymmetric effect on the Jackson and Jones campaigns. The Defendants have provided ample evidence throughout the PI Hearing and the TRO Hearing that shows that the Jackson campaign is outspending the Jones campaign by a large margin. On the date of the TRO Hearing, the Jackson campaign had already spent or planned to spend $29.08 million on television advertising, which was less than $10 million away from the total spend on television advertisements in the 2022 Republican gubernatorial primary. (*See* TRO Hearing at 30:06-30:13 [Doc. 43]). Even with Defendant WBJLC's operations under the LC Statute, the Jackson campaign outspent the Jones campaign at nearly a 3-to-1 ratio in media advertising at the time of the TRO Hearing.

There is no indication that the Jackson campaign plans to cease its level of advertising spending in the near future. Additionally, there is no indication that the Jackson campaign intends to breach the contribution limits imposed by O.C.G.A. § 21-5-41. The Jackson campaign will continue to solicit and accept contributions while Plaintiff Jackson continues to self-fund his campaign. The preliminary injunction does not affect the Jackson campaign directly in any

34

way.

But the preliminary injunction has a massive effect on the Jones campaign. Unlike the facts underlying *Perdue* and *Carr*, the Jones campaign is competing for the Republican nomination against a self-funded candidate who has been continuing to spend large sums of money in support of his own campaign. Removing Defendant WBJLC's ability to fundraise on behalf of the Jones campaign would exacerbate the media spend disparity and leave the Jones campaign likely unable to compete in the media space. While the parties can rightfully claim that their First Amendment rights would be violated with or without the injunction, a large factual inequity still exists.

But the Plaintiffs argue that the Eleventh Circuit will likely not reach a decision before the conclusion of the Republican gubernatorial primary and that keeping the injunction would force the Eleventh Circuit to act out of time sensitivity. (*See* PI Hearing at 95:5-95:12, 96:16-97:3). The Court is unpersuaded by the argument. First, the Defendants have stated that they intend to appeal to the Eleventh Circuit on an emergency basis as soon as possible. (*See id.* at 97:10-97:14). Second, as the Defendants noted, the Eleventh Circuit has acted in the time period required for the Plaintiffs to potentially obtain relief. (*See id.* at 97:15-97:19). And third, the entry of any stay by this Court can be immediately appealed to the Eleventh Circuit by the

35

Plaintiffs if they feel that the Defendants are taking too long. The Plaintiffs themselves know this option, as in the time it took for the Court to issue its written order, the Plaintiffs have already filed an appeal with the Eleventh Circuit. Accordingly, the Plaintiffs' arguments fail and the third factor strongly favors Defendant WBJLC.

### 4. Public Interest

Finally, the Court asks whether granting the stay would disserve the public interest. *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1317. As previously discussed within the analysis for a preliminary injunction, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Scott*, 612 F.3d at 1297. Further, it is in the public interest to protect First Amendment rights. *See Honeyfund.com Inc.*, 94 F.4th at 1283 (11th Cir. 2024). Because Defendant WBJLC has made a strong showing that the effect of the preliminary injunction will result in a reduction of its First Amendment rights, the Court holds that the fourth factor favors the grant of a stay.

In sum, while Defendant WBJLC cannot make a showing that it will substantially succeed on the merits of the Plaintiffs' claims, the remaining factors strongly counsel for stay relief because of the substantial negative impact on Defendant WBJLC's First Amendment rights and the Jones

36

campaign's ability to remain competitive in the Republican gubernatorial primary. While it is rare for a district court to stay its own injunction, this is one such exceptional circumstance where such a stay is necessary to protect the Constitutional rights of all parties. Accordingly, the Court will exercise its discretion and stay its own preliminary injunction.

## IV.   Conclusion

For the foregoing reasons as well as those stated on the record at the PI Hearing, the Plaintiffs' Emergency Motion for Preliminary Injunction [Doc. 12] is GRANTED in part and DENIED in part and Defendant WBJLC's Oral Motion to Stay the Preliminary Injunction is GRANTED.

As to the Plaintiffs' Emergency Motion for Preliminary Injunction [Doc. 12], Defendant WBJLC is hereby ENJOINED from soliciting contributions and making any expenditures in support of Defendant Jones' Georgia gubernatorial campaign until Defendant Jones becomes the nominee of the Republican Party or further order of this Court, whichever comes first. This injunction applies only to Defendant WBJLC and no other party in this action. All other injunctive relief requested by the Plaintiffs is DENIED.

As to Defendant WBJLC's Oral Motion to Stay the Preliminary Injunction, the preliminary injunctive relief entered against Defendant WBJLC is hereby STAYED pending appeal to the Eleventh Circuit. The stay

entered by this Court shall continue until the Eleventh Circuit rules on the merits of the appeal or the Republican candidate for Governor has been nominated, whichever comes first.

SO ORDERED, this ___19th___ day of March, 2026.

THOMAS W. THRASH, JR.
United States District Judge

38